CHARLES LATINO vs. CRANE RENTAL COMPANY, INC.;
GENERAL STEEL FABRICATORS, INC., third-party defendant.

Worcester. January 5, 1994. - April 7, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Jury and Jurors. Practice, Civil*, Verdict, Interrogation of jurors, New
trial. *Evidence*, Relating to deliberation by jurors. *Negligence*, Con-
struction work. *Indemnity. Contract*, Indemnity.

A trial judge was entitled in his discretion and on his own motion to con-
duct an inquiry of the jury in a civil action to determine whether the
jury had agreed on the special verdicts they announced in open court
and, in doing so, the judge did not improperly intrude into areas of jury
activity closed to judicial inquiry. [429-431]

The judge at the trial of a civil action properly submitted to the jury issues
whether the defendant had been negligent in the operation of a crane,
whether that negligence caused the plaintiff's injuries, and whether the
plaintiff had been negligent; moreover, the judge did not err in permit-
ting cross-examination of the operator of the crane as to the accepted
practice in operating the crane in the circumstances. [432]

On a third-party claim in which the lessor of a crane (with an operator)
sought indemnification for any liability the lessor had to the crane's
lessee (third-party defendant), arising from injuries sustained by an
employee of the third-party defendant when he was struck on the leg by
a beam being lifted by the crane, the judge did not err in dismissing the
third-party action, where a finding by the judge that a foreman em-
ployed by the third-party defendant had no authority to change a previ-
ously negotiated rental agreement containing no provision for indemni-
fication was not clearly erroneous, and where there was no factual basis
for ruling that subsequent actions of the third-party defendant were an
implicit ratification of the foreman's action, or that the third-party de-
fendant was otherwise estopped to deny such a ratification. [432]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 29, 1989.

The case was tried before *John P. Forte*, J., sitting under
statutory authority.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Frederick L. Brown*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*David C. Nunheimer* for Crane Rental Company, Inc.

*Alice J. Klein* for the plaintiff.

*Paul R. Keane* for General Steel Fabricators, Inc.

WILKINS, J. The trial judge concluded, based on his post-verdict investigation, that the jury did not in fact reach the special verdicts for the plaintiff that were announced and affirmed in open court. He therefore granted the defendant Crane a new trial, the jury having been discharged more than a week earlier. When, however, a single justice of the Appeals Court, on the plaintiff's request for interlocutory relief, ruled that the new trial order was "without force," the trial judge ordered that judgment be entered pursuant to the verdicts returned in open court.

We allowed Crane's application for direct appellate review to consider whether the recorded verdicts were properly vacated. We conclude that the trial judge was entitled to investigate the alleged failure of the jury to reach verdicts and that his initial order granting the defendant a new trial was correct. On other issues, we reject Crane's argument that the judge should have entered judgment for it notwithstanding the verdict and Crane's challenge to the dismissal of its third-party action seeking indemnity from General Steel Fabricators, Inc. (General Steel).

On December 16, 1987, the plaintiff Latino, an employee of General Steel, was setting horizontal steel beams into a structure under construction in Worcester. The defendant Crane had leased a crane, with an operator, to General Steel to participate with General Steel employees in installing the steel beams. Latino was injured when he was struck on a leg by a beam that Crane's employee had raised to the fourth floor level of the structure. The jury issues were whether Crane had been negligent, whether that negligence caused Latino's injuries, what his damages were, and whether Latino had been negligent.

The judge submitted separate questions to the jury on each of these issues.[1] The transcript of the proceedings on September 19, 1991, shows that in answer to the special questions the jury found that the crane operator was negligent, that that negligence proximately caused Latino's injuries, that Latino's damages were $200,000, and that Latino had not been negligent. After reciting each of the questions and the answer to each, the clerk asked the jury's foreperson whether the answer was correct as announced, to which she replied in the affirmative. The clerk then asked as to each answer, "So say you, twelve of you members of the jury?" The transcript indicates as to each question: "The jurors: Yes."[2]

Eleven days later the trial judge set aside the special verdicts, declared a mistrial, and set the case down for a new trial based on the following findings:

> "About a half hour after the jury was dismissed two jurors came to the lobby complaining that a minority of three, possibly four, were ignored when votes were counted by the foreperson.

> "Shortly after the two jurors left the lobby, the defense counsel reported 'that three jurors complained to him about the verdict at which point he promptly stated he couldn't talk to them and if they had any problem, for them to see the judge.

> "The next morning I had the court reporter (a voice writer with a two track recording system) play back the jury's answer to the clerk's questions. To the first question, there may be a or some noes; to the second question, there were noes heard and the same to the third question.

---

[1]The parties agreed that all fourteen sitting jurors could deliberate and, accordingly, twelve of the fourteen jurors had to agree on the answer to each question. See G. L. c. 234, § 34A (1992 ed.).

[2]Each question varied slightly. As to the question concerning Latino's negligence, the clerk said "So say you all, members of the jury?" Nothing turns on the difference.

"On Monday, September 30, 1991 in the presence of counsel, I interrogated each juror individually in private. The questions were: (1) how did you vote on each question and (2) what do you remember the total vote was on each question in my attempt to determine whether the verdict was correctly reported. On each question the vote was 11 to 3, one vote less than 5/6 or the agreed upon twelve.

"On question three [damages], one juror stated the overall vote was 12-2, eleven jurors stated they voted for the reported amount, but thirteen jurors agreed the vote was less than twelve, ranging from five votes to not 12. The foreperson and two other jurors reported there were only six votes in favor of the amount of the award."[3]

Latino's challenge to the judge's action is based principally on his position that the judge had no right to go behind the special verdicts returned and affirmed in open court. He does not challenge the judge's findings as clearly erroneous. Any objection to the form of any question that the judge asked the jurors, to his use of the reporter's tape, and to his failure to inquire about outside influences on the jurors were not seasonably raised below and come too late.

We conclude that the judge was entitled in his discretion and on his own motion to conduct the inquiry and that, in doing so, he did not improperly intrude into areas of jury activity closed to judicial inquiry.[4] We stated the general rule against receiving juror testimony to impeach a verdict in *Cassamasse* v. *J.G. Lamotte & Son*, 391 Mass. 315 (1984),

---

[3]Nothing in the record indicates why the judge, the clerk, and counsel did not react to the negative answers spoken in the courtroom on the taking of the special verdicts, or why none of the dissenting jurors spoke up during the affirmation of their verdicts. Because the jury had been discharged before the validity of their verdicts was questioned, the judge had no alternative to ordering a new trial. See *Commonwealth* v. *Brown*, 367 Mass. 24, 28 (1975).

[4]We express no view on whether a party would have the right to insist on an inquiry in similar circumstances.

as follows: "Juror testimony concerning the mental processes of jurors during deliberations, such as testimony that the jurors did not follow the judge's instructions, or that they misunderstood the legal consequences of their verdict, or that they were influenced by matters not in evidence, is not permitted to impeach a verdict." *Id.* at 317-318. See *Commonwealth* v. *Fidler*, 377 Mass. 192, 195-198 (1979) (inquiry of jurors permitted as to existence of extraneous influences, but not as to effect of those influences on jury deliberations); *Shears* v. *Metropolitan Transit Auth.*, 324 Mass. 358, 361 (1949) (no inquiry permitted where verdict was unintended because of jury's misunderstanding of legal consequences of their verdict); *Woodward* v. *Leavitt*, 107 Mass. 453, 460 (1871) (no juror evidence permitted concerning jury's discussions or motives and influences affecting deliberations).

An inquiry into the question whether the jury agreed on the special verdicts announced in open court is not foreclosed by this general rule. When a jury reached a verdict but it was improperly reported, we have allowed a correction to be made. "[A] discrepancy between the verdict actually agreed upon by the jury and that reported by them may, upon proper proof, be corrected after the separation of the jury." *Lapham* v. *Eastern Mass. St. Ry.*, 343 Mass. 489, 492 (1962). See *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 386-388 (1912) (juror affidavits allowed to prove that "No" written on verdict slip did not reflect agreement of jury that intended answer be "Yes"); *Capen* v. *Stoughton*, 16 Gray 364, 367 (1860) (juror affidavits allowed to prove jury's mistake in signing the wrong verdict form). We have not confronted the less likely circumstance that a jury reported a verdict when in fact they had not reached one.[5]

The reasons for allowing a verdict mistakenly entered to be corrected apply equally to allowing a verdict that was

---

[5]The record does not show why the jurors decided to return to the courtroom when twelve jurors had not agreed on the answers to the special questions. Any questioning on that subject, however, could have intruded into the jury's deliberative processes, a forbidden area of inquiry.

never reached to be vacated. Conducting juror interviews designed to ascertain what the jury decided, and not why they did so, is sound "where the court surmises that the verdict announced differs from the result intended." *Attridge* v. *Cencorp Div. of Dover Technologies Int'l, Inc.*, 836 F.2d 113, 114 (2d Cir. 1987). See *Fox* v. *United States*, 417 F.2d 84, 89 (5th Cir. 1969) ("It has long been well settled that the affidavit of a juror is admissible to show the true verdict or that no verdict was reached at all"); *Routhier* v. *Detroit*, 338 Mich. 449, 452 (1953) (affidavits by jurors are competent to show "that in fact no agreement was reached by the jurors, resulting in the absence of any verdict whatsoever").

In *Commonwealth* v. *Fidler, supra* at 198, we relied on the presence of "overt factors" that would permit an objective assessment of a verdict's validity and "the law's commitment to a just result" to justify judicial inquiry into the claimed existence of external influences on a jury. This case does not involve a vague or speculative claim of error in the jury's verdict. There were "overt factors" here that warranted inquiry of the jurors as to whether there had been agreement on the special verdicts. Two jurors made relatively prompt, unsolicited complaints to the judge; Crane's attorney corroborated those complaints based on three or four jurors' unsolicited complaints to him; and, most significantly, "no" answers were audible on the court reporter's tape. The tape recording is a contemporaneous and objective indication that there was a problem in the receiving of the special verdicts.

The judge thus was warranted in pursuing the question and, having done so and having made the findings of fact that he did, particularly that all but one juror agreed that no twelve jurors had agreed on the damage award, the judge had no alternative but to grant a new trial. His subsequent order that judgment be entered on the verdict as returned appears to have been influenced solely by the erroneous, and unexplained, conclusion of the single justice of the Appeals Court that the new trial order was "without force." The new trial order shall be reinstated.

Crane's argument that the evidence did not warrant submission of the case to the jury fails. The jury would have been warranted in concluding that the crane operator negligently moved a steel beam in the plaintiff's direction too quickly, causing it to strike a vertical column too hard and to spin so fast that Latino could not avoid being struck. Furthermore, there was, for example, testimony that the beam swung in "too hard" and that it moved quickly. The judge did not err in permitting cross-examination of the crane operator as to what good and accepted practice was in the operation of the crane in the circumstances.

We come finally to Crane's argument that the judge erred in ruling that Latino's employer, General Steel, had no obligation to indemnify Crane for any liability that Crane had to Latino. The indemnity provision on which Crane relies was printed on the back of daily rental slips that were used to verify the time when the crane was in use. General Steel's foreman signed the slips at the construction site. The judge found that the foreman had no authority to change the previously negotiated rental agreement between Crane and General Steel, a finding that is not clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). Furthermore, there was no factual basis for ruling either that General Steel's subsequent actions were an implicit ratification of a change in the rental agreement by its foreman, or that General Steel was otherwise estopped to deny such a ratification. Thus the judge did not err in not ruling on the point.

The judgment in favor of the plaintiff is vacated. The order of October 1, 1991, setting aside the special verdicts, declaring a mistrial, and setting the case down for a new trial is reinstated. The judgment of January 21, 1993, dismissing the action of Crane Rental Company, Inc., against General Steel Fabricators, Inc., is affirmed.

*So ordered.*