NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1012                                        Appeals Court

COMMONWEALTH  vs.  SHEENA R. DiBENEDETTO.

No. 17-P-1012.

Worcester.     October 5, 2018. - January 11, 2019.

Present:  Massing, Ditkoff, & Englander, JJ.

Assault and Battery.  Practice, Criminal, Verdict, Instructions
     to jury, Deliberation of jury, Question by jury.  Jury and
     Jurors.


     Complaint received and sworn to in the Worcester Division
of the District Court Department on July 5, 2016.

     The case was tried before Paul F. LoConto, J.


     Mathew B. Zindroski for the defendant.
     Susan M. Oftring, Assistant District Attorney, for the
Commonwealth.


     MASSING, J.  As a general rule, evidence of a jury's

internal thought processes cannot be used to impeach a verdict.

In this appeal, we consider whether this rule applies when the

judge learns, after a guilty verdict has been affirmed and

recorded, that the jurors misunderstood the unanimity

instruction and convicted the defendant by a vote of four to

two.  Concluding that the rule does apply -- and that the judge should have accepted the original verdict instead of sending the jurors out to continue deliberations, resulting in a second guilty verdict -- we affirm the defendant's conviction in the District Court of assault and battery of a family or household member, in violation of G. L. c. 265, § 13M (a).

Background.  We briefly summarize the trial testimony, then discuss in greater detail the circumstances surrounding the taking of the verdict.  The defendant arrived at the home of the father of her two children to pick them up for a scheduled trip to Niagara Falls.  The father expected the defendant at 8 A.M., but she arrived at 4:30 A.M. and banged on the front door.  After an unfriendly exchange of words, the defendant punched the father in the face.  She claimed that she struck him in self-defense.

In the final charge, the judge instructed the jury that the defendant is presumed innocent "unless and until the evidence convinces you unanimously as a jury that the defendant is guilty beyond a reasonable doubt."  The judge reiterated, "And, again, your verdict whether it is guilty or not guilty must be unanimous."  After selecting the foreperson, the judge explained to her, "Once your jury has reached a unanimous verdict, that is all six of you agree, it's your obligation to mark the verdict slip."

Following the judge's charge, the jury deliberated for approximately forty minutes and reached a verdict. Before taking the verdict, the judge informed the jury that they would be free to talk about the case after they were discharged, and "although I'm going to discharge you . . . I do want to see you ever so briefly in the deliberation room before you leave the building."

The clerk then asked if the jury had reached "a unanimous verdict." The foreperson answered, "Yes, we have," and that the verdict was guilty. After recording the verdict, the clerk asked the foreperson to confirm that the verdict of guilty was accurate. She responded, "That is correct." The clerk then asked the entire jury if the guilty verdict was correct, and they affirmed that it was. The judge then excused the jury, stating, "I'm going to now formally discharge you. I'm going to see you momentarily in the jury deliberation room." The judge told the parties, "I'm just going to say goodbye to the jurors and give them an opportunity if they want to present any questions or criticisms. I'm not going to discuss with them potential penalties or their deliberation obviously."

After a brief recess, the judge returned to the court room and explained that after thanking the jurors for their service, he had solicited feedback about their experience, emphasizing that he did not want to hear about their deliberative process.

A juror asked, "[W]hat would happen" if the result was four to two. The judge responded, "[Y]our decision has to be unanimous." Another juror then offered, "[W]ell, that should be made more plain, more clear." The first juror added, "[B]ecause it wasn't unanimous." At this point, the judge ended the conversation, told the jury, "I can't discharge you right now," and returned to the court room.

The judge informed the parties that he intended to bring the first juror into the court room to see if he had correctly understood her comments. Without objection, the judge described his recollection of the conversation to the juror and asked what she had meant when she said the verdict was not unanimous. The juror responded, "[T]wo of us, we didn't find the defendant guilty and four did." The juror said that she had voted not guilty and identified the foreperson as the other not guilty vote. She had "kept quiet" during the affirmation because the foreperson had said that only a majority was needed to reach a verdict.

The judge sent the juror back to the deliberation room with instructions to not speak with anyone and called the foreperson into the court room. When asked if she understood whether the verdict had to be unanimous, she replied, "All six of us thought it was the majority," and, "I guess nobody paid attention to the word unanimous." The judge sent the foreperson back to the

deliberation room with instructions to have no discussion with anyone.

The judge suggested, and the parties agreed, that the jury should continue deliberations after being reinstructed on unanimity. The judge brought the jury back to the court room, instructed them that "all six of you would have to agree that the defendant is guilty or the defendant is not guilty," and ordered them to resume deliberations. Later that day, after asking to be reinstructed on self-defense, the jury again reported that they had reached a verdict. The foreperson announced the verdict of guilty; the judge polled the jury, and all affirmed that they had voted guilty. The judge thanked the jury and dismissed them, stating, "You are discharged and free to leave."

Discussion. Although at trial she agreed with how the judge handled the issue, the defendant now contends that by the time the judge learned that the original verdict was not unanimous he had already discharged the jurors and could not validly order them to continue deliberations. Accordingly, she asks that we set aside the second verdict and order a new trial. The Commonwealth responds that the original verdict was valid and, in the alternative, that the second verdict was valid as well. We conclude that the jury's original guilty verdict was final when the foreperson announced it in open court, the rest

of the jury affirmed it, and the clerk recorded it.  None of the jurors publicly voiced or otherwise indicated disagreement, nor did any of them come forward to state that the verdict was not accurate.  Only when the judge later invited the jury to express their criticisms and suggestions did the jurors communicate the content of their deliberations.  The original verdict should not have been disturbed.[1]

"Before a verdict has been affirmed and recorded, the judge may set it aside or instruct the jury and send them out for further deliberation."  Commonwealth v. Brown, 367 Mass. 24, 28 (1975).  The announcement and affirmation of the verdict provides "each juror . . . an opportunity to express his dissent to the court, in case his decision has been mistaken or misrepresented by the foreman or his fellows, or in case he has been forced into acquiescence by improper means."  Commonwealth v. Lawson, 425 Mass. 528, 530 (1997), quoting Lawrence v. Stearns, 11 Pick. 501, 502 (1831).  See Commonwealth v. Nettis, 418 Mass. 715, 718 (1994) (verdict not final where juror publicly indicated dissent during affirmation).

---

[1] We recognize that the judge endeavored not to intrude into the jury's deliberative process, and that his subsequent actions were taken solely "out of concern for an accurate verdict and fair treatment of the defendant.  The judge was correct to place [his] concerns on the record in the presence of all counsel." Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 130 n.8 (2011).

After being affirmed by the jury and recorded by the clerk, however, the verdict is final.  See Commonwealth v. Martell, 407 Mass. 288, 292, 294 (1990); Lawrence, 11 Pick. at 502.  Once the verdict is affirmed and recorded, "a judge is generally precluded from inquiring into alleged improprieties in the jury's deliberations or decision-making."  Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 130 (2011).[2]  A judge cannot vacate a verdict based on "a juror's change of heart nor a juror's subsequent disclosure of a subjective disagreement with her apparent vote."  Commonwealth v. Dias, 419 Mass. 698, 703 (1995).  "Whatever disagreement that a juror may have secretly entertained but did not indicate in open court may not be the basis for reversal."  Lawson, 425 Mass. at 532.

Impeaching a duly recorded verdict by subsequent inquiry into the jurors' deliberations has long been prohibited.  See Tanner v. United States, 483 U.S. 107, 117 (1987); McDonald v. Pless, 238 U.S. 264, 267-268 (1915); Commonwealth v. Moore, 474 Mass. 541, 544-545 (2016).  See also Commonwealth v. Fidler, 377 Mass. 192, 195 (1979) (tracing "rule against juror impeachment of a verdict" to Vaise v. Delaval, 99 Eng. Rep. 944 [K.B.

---

[2] A judge does not violate this rule by allowing jurors "to correct formal and clerical errors in the recording of verdicts to which they had properly agreed."  Brown, 367 Mass. at 28. See Latino v. Crane Rental Co., 417 Mass. 426, 430 (1994) ("When a jury reached a verdict but it was improperly reported, we have allowed a correction to be made").

1785]).  "The proper evidence of the decision of the jury is the verdict returned by them upon oath and affirmed in open court; it is essential to the freedom and independence of their deliberations that their discussions in the jury room should be kept secret and inviolable; and to admit the testimony of jurors to what took place there would create distrust, embarrassment and uncertainty."  Fidler, 377 Mass. at 196, quoting Woodward v. Leavitt, 107 Mass. 453, 460 (1871).

Thus, juror testimony concerning the jurors' internal deliberations cannot be used to impeach a verdict.  See Commonwealth v. Hebert, 379 Mass. 752, 755 (1980), quoting Fidler, 377 Mass. at 198 ("our law does not permit inquiry into 'the subjective mental processes of jurors, such as the reasons for their decisions'").  "The judge is precluded from inquiring into the internal decision making process of the jury as a whole or of the individual juror being questioned."  Martell, 407 Mass. at 294-295.  Accordingly, evidence that jurors "misunderstood the instructions of the presiding judge, or that they were induced by misapprehension to assent to the affirmation of the verdict," Bridgewater v. Plymouth, 97 Mass. 382, 390 (1867), "testimony that the jurors did not follow the judge's instructions," Cassamasse v. J.G. Lamotte & Son, Inc., 391 Mass. 315, 317-318 (1984), or that a juror "felt pressured

by her fellow jurors to vote guilty," Martell, 407 Mass. at 295, cannot be considered.

The prohibition against juror testimony to impeach a verdict is not absolute. Fidler, 377 Mass. at 196. Juror testimony may be used to show the existence of extraneous influences on the verdict, such as unauthorized site visits, improper communications with third parties, or consideration of facts not in evidence. See Martell, 407 Mass. at 294-295; Cassamasse, 391 Mass. at 317-318; Fidler, 377 Mass. at 197. "[I]nquiry into extraneous influences does not probe into 'subjective mental processes.'" Matter of the Enforcement of a Subpoena, 463 Mass. 162, 175 (2012), quoting Fidler, 377 Mass. at 198.[3]

---

[3] The proper parameters of juror testimony are succinctly summarized in Mass. G. Evid. § 606(b) (2018), as follows:

"(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations, the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

"(2) Exceptions. A juror may testify about whether

    (A) extraneous prejudicial information was improperly brought to the jury's attention or

    (B) an outside influence was improperly brought to bear on any juror."

Judges are also permitted to inquire whether a verdict was infected by racial or ethnic bias, even though such questioning straddles the line between the jurors' subjective mental processes and extraneous influences. See Pena-Rodriguez v. Colorado, 137 S. Ct. 855, 869 (2017); Commonwealth v. McCowen, 458 Mass. 461, 497 (2010). "[W]here a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment [to the United States Constitution] requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." Pena-Rodriguez, 137 S. Ct. at 869.

An argument might be made that this exception to the general rule should be extended to protect the right to a unanimous jury. See Burch v. Louisiana, 441 U.S. 130, 134 (1979) (Sixth and Fourteenth Amendments to United States Constitution require juries of six to be unanimous); Commonwealth v. Conefrey, 420 Mass. 508, 511-512 & n.7 (1995) (although not specifically guaranteed under Massachusetts Declaration of Rights, common law requires unanimous jury verdicts in criminal trials in Commonwealth). However, the same logic would apply with even more force to permit inquiry into whether the jury understood and properly applied the judge's

instructions on the government's burden of proof (including its obligation to prove the absence of self-defense), or on the standard of proof beyond a reasonable doubt, which implicate bedrock constitutional rights. See Commonwealth v. Shanahan, 422 Mass. 631, 632 (1996); Commonwealth v. Stokes, 374 Mass. 583, 589 (1978). We decline to start down this slippery slope, lest the exceptions swallow the rule. The infection of the criminal justice system with racial or ethnic bias is a unique type of constitutional deprivation that requires a vigilant response not warranted in the circumstances presented here.

Applying the general rule, we have held that a judge erred by striking a recorded verdict after learning in a posttrial conversation with the jurors that one or two of them disagreed with the guilty verdict. Lassiter, 80 Mass. App. Ct. at 127, 130-131. The defendant argues that Lassiter is distinguishable because it involved only subjective disagreement with the verdict -- the foreperson stated "that they all voted and that they unanimously agreed," id. at 127 -- whereas here the jurors' testimony provided objective evidence that the verdict was not unanimous. The distinction is irrelevant. The error in Lassiter and the error here were the same -- juror testimony concerning internal deliberations, in this case, that they misunderstood the unanimity instruction, is incompetent to impeach a duly recorded and binding verdict. See United States

v. Homer, 411 F. Supp. 972, 976-979 (W.D. Pa.), aff'd, 545 F.2d 864 (3d Cir. 1976), cert. denied, 431 U.S. 954 (1977) (jurors' testimony that they did not understand judge's unanimity instructions incompetent to impeach verdict); Hall v. Levine, 104 P.3d 222, 225 (Colo. 2005) (error to set aside verdict based on jurors' disclosures in postverdict conversation with trial judge that they had "failed to follow instructions requiring the verdict to be unanimous").

We find further support for our decision in Commonwealth v. Reaves, 434 Mass. 383 (2001). After a verdict of guilty had been recorded on a charge of murder in the first degree had been recorded, the judge polled the jury and learned that the vote was eleven to one. Id. at 395. The judge then ordered the jury to resume deliberations; forty-five minutes later they unanimously agreed to the verdict. Id. at 396. The court held that the judge erred by polling the jury after the verdict had been recorded, and that the original verdict was valid. Id.

The jurors' testimony here did not relate to "overt factors" that a judge may properly assess in deciding the verdict's validity. Latino v. Crane Rental Co., 417 Mass. 426, 431 (1994). Fidler, 377 Mass. at 198. In Latino, 417 Mass. at 428, a number of jurors complained to the judge and to defense counsel that their votes were ignored. The court found the presence of overt factors in that the jurors "made relatively

prompt, unsolicited complaints to the judge," and "most significantly, 'no' answers were audible on the court reporter's tape." Id. at 431. Similarly, this was not a case in which the jurors spontaneously and promptly informed the judge that the verdicts were erroneous because they were the result of clerical error. See Brown, 367 Mass. at 28-29 ("the jury, by their own action and without any suggestion from the judge or any one else, immediately indicated that the verdicts reported did not state what they had agreed to"). Here, by contrast, the record reflects that no juror expressed any public disagreement with the original verdict when it was announced. See Dias, 419 Mass. at 703; Nettis, 418 Mass. at 718. The original verdict was not ambiguous, contrast Commonwealth v. Zekirias, 443 Mass. 27, 31-32 (2004), but accurately reflected the result of the deliberations, contrast Brown, 367 Mass. at 28-29.

A judge's power to set aside a verdict and send the jury out for further deliberations "terminates when the verdict is affirmed and recorded." Brown, 367 Mass. at 28.[4] The original guilty verdict was valid, and the judge erred by setting it

_____

[4] We need not address whether the judge effectively discharged the jury after he accepted the original verdict, rendering any further deliberations void. In any event, the judge's error in setting aside the original verdict "clearly inured to the defendant's benefit, giving him a second chance to be acquitted. . . . No harm flowed thereafter, not least because the defendant was ultimately no worse off than if the error had never occurred." Lassiter, 80 Mass. App. Ct. at 131.

aside based on impermissible evidence of the jury's internal deliberations.

<u>Judgment affirmed</u>.