APPEALS COURT 
 
 COMMONWEALTH vs. SCOT DOUGLAS DAVIS

 
 Docket:
 23-P-1366
 
 
 Dates:
 December 13, 2024 – April 4, 2025
 
 
 Present:
 Blake, C.J., Shin, & Hand, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Assault and Battery. Waiver. Practice, Criminal, Waiver of trial by jury, Trial by jury, Argument by prosecutor. Evidence, Prior misconduct, Self-defense, Relevancy and materiality.
 
 

             Complaint received and sworn to in the Ayer Division of the District Court Department on September 3, 2020. 
            The case was tried before Tejal Mehta, J.
            Alexander Conley for the defendant.
            Jessica Langsam, Assistant District Attorney, for the Commonwealth.
            HAND, J.  After an altercation in which the defendant "shoved" his mother and "lunged at" his stepfather, the defendant, Scot Douglas Davis, was charged in the District Court with assault and battery and assault.  G. L. c. 265, § 13A (a).  He was convicted of both charges after a jury trial.  On appeal, the defendant argues that the judgments should be vacated, and the case remanded for a new trial, for three reasons.  First, relying on Commonwealth v. Gebo, 489 Mass. 757 (2022), he argues that the trial judge abused her discretion in refusing to accept the jury waiver the defendant tendered on the day of his jury trial.  Second, he contends that the judge improperly admitted evidence of inappropriate statements the defendant made to his stepsister shortly before the physical altercation that led to his arrest.  Third, he argues that the prosecutor misstated the evidence in her closing argument.
            We do not agree that the defendant is entitled to the relief he seeks.  The defendant did not have a right to waive the jury, and we discern no abuse of discretion in the judge's rejection of the defendant's waiver.  See Gebo, 489 Mass. at 764, 766.  Our review of the judge's explanation for her rejection of the waiver persuades us that her decision was based on concerns about the "fair and efficient administration of justice," id. at 767, and that her reason for declining the waiver was "good and sufficient."  Mass. R. Crim. P. 19 (a), as appearing in 486 Mass. 1501 (2020).  We are likewise unconvinced that the judge abused her discretion in admitting evidence of the statements the defendant challenges on appeal where those statements were not bad acts evidence and were, in any event, relevant and not unfairly prejudicial.  Finally, while we agree that there was no evidence to support the prosecutor's argument that the defendant "threw [his mother] to the ground" during the altercation at issue, we are not persuaded that this error created a substantial risk of a miscarriage of justice.  Accordingly, we affirm the judgments.
            1.  Procedural history.  The defendant was arrested and arraigned in the District Court in September 2020.  The case was marked for trial several times and, as we will discuss, was called for trial twice before the May 2, 2023, trial date at issue in this appeal.  After a trial readiness conference on April 28, 2023, at which the defendant moved unsuccessfully to continue the scheduled jury trial date,[1] the case was set for trial on May 2, 2023.
            On the morning of the scheduled trial, the defendant filed a jury waiver.  The judge declined the waiver, stating:
"All right, so this matter is [on] for jury trial today, and we have [sixteen] jurors upstairs.  We did have a trial readiness conference on Friday where it was indicated there was a request to continue that was denied.  And it was asserted that this would be a jury trial today.  Therefore, we brought in jurors.  There's a waiver filed, but it's a jury trial, counsel, so I would ask for you to go jury today.  I'll also say for the record, the case is three years old.  It's ancient, and even the docket is kind of falling apart from age.  It's ancient by District Court standards, and a decision to go jury waived could have been made any time before today and was not.  So it will be a jury trial."
            The jury were empaneled, the case was tried, and the defendant was convicted of both charges in the complaint.[2]  The defendant filed a timely notice of appeal from his convictions.[3]
            2.  Trial evidence.  The Commonwealth called five trial witnesses:  the defendant's adult stepsister, Danielle;[4] Danielle's father (the defendant's stepfather), Lawrence; the defendant's mother (Lawrence's wife), Elaine; and two police officers.  The jury could have found the following facts based on the witnesses' testimony.
            On the evening in question, the forty-six year old defendant came into the house where Elaine and Lawrence lived and Danielle was visiting.[5]  The three had gathered for dinner.  The defendant then began saying "lewd and lascivious things to Danielle."  More specifically, Danielle testified that the defendant made a series of "little inappropriate comments" to her about her appearance; he told her that she was "hot" and that she "had beautiful eyes and beautiful teeth and a nice neck."[6]  Danielle also testified that the defendant appeared intoxicated,[7] and that he was speaking in a "humorous" tone.
            Danielle tried to change the subject, and both Lawrence and Elaine repeatedly told the defendant to stop making these comments.  Danielle testified that the defendant's comments were making her uncomfortable and that she was leaving, but Lawrence asked her to stay.
            Elaine then stepped between the defendant and Danielle because the defendant did not respond to Elaine's instructions to "knock it off," and he instead kept trying to touch Danielle.  The defendant "seemed to settle down," so Elaine stepped back, but he "[t]hen . . . picked up again, . . . telling [Danielle] to come to his trailer."  Elaine told the defendant that his comments were "totally inappropriate," but the defendant continued making comments to Danielle, stating that "he was well endowed" and that he could "show her . . . the time of her life."  At this point, Lawrence again told the defendant to stop, saying "that's my daughter you're talking to.  I warned you to stop."
            The witnesses' accounts of what followed varied in some of their details.  According to Danielle, the defendant responded to Lawrence by "[giving] him a threatening look," "g[etting] very close to [his] face," and "lung[ing]" at him.  Elaine then came toward the defendant and "pulled at [his] shoulder" in an attempt to intervene, but the defendant "shoved" Elaine back with one hand so she "fell back a little against the corner of the counter."  At that point, the defendant punched Lawrence in the face.  Lawrence hit the defendant back, and the two men continued to fistfight.  Danielle interceded, the police arrived at the house, and the defendant was taken to the hospital.
            Elaine testified that when she saw the defendant "starting towards [Lawrence]," she moved in front of the defendant and told him to leave.  In response, the defendant "took [her] [by her shoulders] and he threw [her] into the counter," causing her to hit her leg, side, and shoulder on the cabinets.  She "grabbed on [to the counter]" so she "didn't fall to the ground," and she then saw the defendant "charge" at Lawrence and hit him in the eye.
            Finally, Lawrence testified that when Elaine "put her arms on" the defendant to "persuade him to go outside," the defendant "slammed her against the cabinet" and "came straight down and punched [him] in the [left eye]."  Lawrence hit the defendant back and the two men ended up on the floor, where Lawrence held the defendant down until the police arrived.
            3.  Discussion.  a.  Denial of jury waiver.  The defendant contends that the judge abused her discretion by rejecting his jury waiver without a "good and sufficient reason" for doing so.  Mass. R. Crim. P. 19 (a).  See Gebo, 489 Mass. at 766.  We disagree.  The judge's explanation, although brief, is consistent with her denial of the waiver based on her concerns about (1) the defendant's use of the waiver as a litigation tactic and (2) the proper use of court resources -- here, jurors -- rather than on its timing alone.
            "The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant the right to a trial by jury."  Gebo, 489 Mass. at 757.  Although, by statute, a criminal defendant in a noncapital case may request a waiver of the jury at any time before empanelment by filing a written waiver in the trial court, see G. L. c. 263, § 6, Gebo, supra at 757-758;, "neither the Federal nor the State Constitution provides the right to waive a jury trial."  Gebo, supra at 764, quoting Commonwealth v. Francis, 450 Mass. 132, 134 (2007), S.C., 477 Mass. 582 (2017).  See Commonwealth v. Collado, 426 Mass. 675, 678 (1998) (jury waiver provisions in G. L. c. 263, § 6, and rule 19 [a] "do not vest any personal right[s] in criminal defendants").  "[A] judge may refuse to approve such a waiver for any good and sufficient reason provided that such refusal is given in open court and on the record."  Gebo, supra at 762, quoting rule 19 (a).  "[A] judge possesses broad discretion to deny a defendant's motion for a jury waiver," and our review is for an abuse of that discretion.  Gebo, supra at 766.
            No statute or rule defines "good and sufficient reason" for the purposes of a jury waiver.  See Gebo, 489 Mass. at 758.  Accordingly, when the issue was raised in Gebo, supra, the Supreme Judicial Court established the "contours" of that standard, id. at 758, by conducting a detailed analysis of G. L. c. 263, § 6;[8] Mass. R. Crim. P. 11 (b) (2) (iii), as appearing in 442 Mass. 1509 (2004); rule 19 (a);[9] and the District Court and Municipal Court Rules of Criminal Procedure relating to jury waivers.  See Gebo, supra at 762-764.  Having done so, the court concluded that "a judge may deny a defendant's request for a jury waiver if, in the circumstances of the case, doing so would serve the fair and efficient administration of justice."  Id. at 767.
            In Gebo, 489 Mass. at 759-760, as in this case, the defendant filed a jury waiver on the day of her District Court jury trial after asserting her right to a jury at a trial readiness conference less than two weeks earlier.  The judge denied the defendant's request, citing the eleventh-hour timing of the waiver and his concern that the defendant was "judge shopping" or, in other words, using the waiver procedure "to steer the case away from a jury and toward [that] judge."  Id. at 761, 764.
            On appeal, the court emphasized that "the mere fact that a defendant seeks to waive his or her right to a jury trial on the day of trial cannot render the request for a jury-waived trial invalid per se."  Gebo, 489 Mass. at 771.  Yet, because "G. L. c. 263, § 6, does not circumscribe a judge's discretion to deny a request for a jury waiver where there are objective circumstances, apart from the timing of a defendant's request, that suggest the defendant is or may be [misusing the jury waiver]," id., the court went on to consider the judge's concerns about the defendant's use of the waiver to "judge shop."  See id. at 768.
            The court emphasized that judge shopping is "inherently unfair to other litigants[ and] undermines public confidence in the judiciary."  Gebo, 489 Mass. at 768-769.  The judge's determination that the defendant's waiver created "[an] appearance or the inkling of judge shopping," id. at 768, brought the matter within "[the] range of circumstances [that] might lead a judge to conclude that a particular case should be tried by a jury."[10]  Id. at 767.  Notwithstanding the fact that "a jury-waived trial typically is more efficient than a jury trial, because it eliminates the expense of empanelling jurors and spares the trial judge the time that otherwise would be spent facilitating a protracted jury trial," id. at 772, the court ruled that the judge acted within his discretion in denying the jury waiver.  See id.
            In the present case, the defendant argues that the judge did what Gebo prohibits by denying his jury waiver "based on timing alone."  The judge here, like the judge in Gebo, did express frustration about the timing of the defendant's waiver; were that the only reason the judge gave for her decision, we would agree that she abused her discretion in denying the waiver.  See Gebo, 489 Mass. at 771.  Here, however, we discern "objective circumstances, apart from the timing of [the] defendant's request," that supported the judge's decision.  Id.  Specifically, we recognize the judge's concern that the defendant was misusing the jury waiver to postpone his trial date.
            With the luxury of hindsight, we acknowledge that the judge could have expressed her concerns more directly than she did.  Nonetheless, read in the context of the entire record -- including, critically, the trial court's docket -- the judge's explanation is adequate to persuade us that her ruling did not rest on the timing of the defendant's waiver alone.  The docket reflects that, after a series of status conferences, the defendant's case was scheduled for a bench trial on June 3, 2022, and it was then brought forward and continued for bench trial on July 15, 2022.  The case was called for trial on July 15, 2022, but did not go forward because, on the trial date, the defendant asserted his right to a jury trial.  The case was subsequently continued for jury trial but, when the new trial date was reached on March 13, 2023, it was again continued, this time because the defendant failed to appear.[11]  The case was assigned the May 2, 2023, jury trial date, with a trial readiness conference to be held at the end of the preceding week.  At that trial readiness conference, the defendant sought a continuance of the May 2, 2023, trial date but, as we have noted, the judge denied the defendant's motion.  Finally, on May 2, the defendant filed his request for a jury waiver.  Notably, the trial judge presided over each of these events.  See Commonwealth v. Perez, 480 Mass. 562, 564 n.3 (2018) (judge presumed familiar with details of case over which that judge presided).
            Reading the judge's comments in this context, we understand her reference to the defendant's recent attempt to continue the trial date as an expression of her belief that the waiver was a litigation tactic intended to obtain another -- and unnecessary -- delay of his trial date.  See Perez, 480 Mass. at 564 n.3.  Additionally, by submitting the waiver after jurors had already reported for empanelment on May 2, 2023, the defendant put the judge in the position of dismissing the jurors before empanelment and thus making no use of the jurors' time, or, if other jury trials were scheduled for that day, of continuing the defendant's case so the jurors could be seated on a different trial.
            The judge's denial of the defendant's waiver thus "serve[d both] the fair and efficient administration of justice."  Gebo, 489 Mass. at 767.  The decision avoided the need to continue the case to another nonjury date -- a continuance the judge had already determined was unnecessary.[12]  See Commonwealth v. Cruz, 456 Mass. 741, 748 (2010), quoting Commonwealth v. Gilchrest, 364 Mass. 272, 276-277 (1973) (judges should avoid "delays that do not 'measurably contribute to the resolution of a particular controversy'"); Gorovitz v. Planning Bd. of Nantucket, 394 Mass. 246, 250 n.7 (1985) (noting with disfavor impact on court resources created by motions used as "dilatory tactics"); Commonwealth v. Tuitt, 393 Mass. 801, 804 (1985) (denial of defendant's motion for removal of counsel was proper on day trial was scheduled to begin where judge concluded that "these motions for a new attorney [were] no more than a delaying tactic").  The ruling also discouraged the defendant from claiming a jury date that he did not intend to use.  Such practices unnecessarily delay other litigants' access to jury trials and, like the practice of judge shopping, "[are] inherently unfair to other litigants."[13]  Gebo, supra at 769.  See Mass. R. Crim. P. 36 (b) (1), as amended, 422 Mass. 1503 (1996) (setting time standards for "[s]peedy [t]rial[s]" in criminal cases).
            The court's discussion in Gebo, 489 Mass. at 772, of the relative efficiencies of jury trials versus nonjury trials, does not require a different result here.  Although in lengthier, more complicated cases, a jury-waived trial "typically is more efficient than a jury trial," id., in the short, straightforward case at issue here, the opposite is true.  Sixteen jurors had already appeared and were waiting in the courthouse for empanelment, meaning much of the expense of the jury empanelment process had already been borne.  See Commonwealth v. Davis, 91 Mass. App. Ct. 631, 633 n.6 (2017) (characterizing jurors as "court resource").  Additionally, whatever time might have been saved by trying the case jury-waived likely would have been negligible, as evidenced by the fact that even as a jury trial, the case was completed in a single day.
            On the record before us, we cannot say that the judge abused her discretion by denying the defendant's jury waiver.  Even if we were to conclude otherwise, however, we are not persuaded that the defendant would be entitled to a new trial as a result.  "[General Laws] c. 263, § 6, and rule 19 (a) merely prescribe procedures to be followed if a defendant . . . wishes to waive the right to a jury trial;" as we have noted, they "do not 'vest any personal right in criminal defendants.'"  Gebo, 489 Mass. at 765, quoting Collado, 426 Mass. at 678.  "[I]n noncapital cases, an unintentional violation of either G. L. c. 263, § 6, or rule 19 (a) will result in reversal only if the defendant can show a substantial risk of a miscarriage of justice."  Collado, supra.
            In an effort to demonstrate the existence of such a risk, the defendant points to a posttrial communication to the Office of the Jury Commissioner from a trial juror, in which the juror reported being "ashamed of the verdict" and suggested that the jury "rushed to judgment."[14]  This communication does not establish the existence of a substantial risk that justice miscarried, however.  As the defendant acknowledges in his brief, a juror's posttrial disagreement with a verdict is not a basis for overturning a defendant's convictions.  See Read v. Commonwealth, 495 Mass. 312, 331 (2025) (probing jurors' secret deliberations undermines principles of finality and confidence in judicial process); Commonwealth v. Dias, 419 Mass. 698, 703 (1995) (judge cannot vacate verdict based on "a juror's change of heart nor a juror's subsequent disclosure of a subjective disagreement with [the juror's own] apparent vote"); Commonwealth v. DiBenedetto, 94 Mass. App. Ct. 682, 685 (2019) ("After being affirmed by the jury and recorded by the clerk, . . . the verdict is final"); Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 130 (2011) ("[A] judge generally cannot inquire into, or set aside, a recorded verdict on account of a juror's post-hoc statement that he or she disagreed with the verdict").  Furthermore, to the extent that the disgruntled juror's comments reflected merely a disagreement with the other jurors' weighing and crediting of the trial evidence, as opposed to a lack of confidence in the ultimate verdict or verdicts, there is nothing other than the defendant's speculation to say that the trial judge would have assessed the evidence differently.  See Commonwealth v. Valentin, 470 Mass. 186, 190 (2014) (without more than defendant's opinion, conclusion that different trial approach would have affected outcome of case is "speculative" [citation omitted]).
            Finally, we are unpersuaded by the defendant's contention that the case was so "emotionally charged" that only a judge, and not a jury, should have been trusted to decide the case fairly and impartially.  The defendant cites no authority to show that the charges against the defendant or the evidence presented at trial was likely to elicit an emotional response that might pose a special challenge to a jury's ability to decide the case fairly and impartially, and we are aware of none.  Because the defendant has failed to put us in "serious doubt whether the result of the trial might have been different" had the judge heard the case jury-waived, Commonwealth v. Curran, 488 Mass. 792, 794 (2021), quoting Valentin, 470 Mass. at 189, he has not met his burden of showing that, if the judge abused her discretion in denying his jury waiver, the error created a substantial risk of a miscarriage of justice.
            b.  Bad acts evidence.  At trial, Danielle, Elaine, and Lawrence testified that the defendant made sexualized comments to Danielle on the night of the altercation at issue, and Danielle and Elaine testified to the substance of those comments.  Elaine also testified that the defendant attempted to touch Danielle.  Although the defendant did not object to this evidence at trial, on appeal, he contends that the evidence was not relevant and, even if it were, it was improperly admitted "bad acts" evidence because its probative value was outweighed by its potential for unfair prejudice to him.  We are not persuaded.
            The Commonwealth's challenge to the defendant's characterization of this evidence as "prior bad acts" has force.  The comments at issue, although made before the defendant pushed Elaine or assaulted Lawrence, were made nearly contemporaneously with those acts and were inextricably intertwined with the events that followed them.  They were thus not "prior bad acts."  Cf. Commonwealth v. Roman, 495 Mass. 412, 420-421 (2025) (treating uncharged misconduct as bad act evidence where misconduct occurred close in time to charged conduct, but not contemporaneously).
            Moreover, even if we were to conclude that the defendant's comments were "bad acts" for this purpose, the judge did not abuse her discretion by admitting them.  See Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016) (judge's admission of bad acts evidence is reviewed for abuse of discretion, and "will not be overturned absent clear error").  Here, the challenged evidence -- particularly the evidence of the defendant's statements about Danielle's appearance, his sexual prowess, and his interest in having sex with her -- explained why an apparently uneventful family gathering rapidly escalated to shoving and fist fighting.[15]  See Commonwealth v. Gonsalves, 488 Mass. 827, 836 (2022) (bad acts evidence is relevant to provide context for crime).  It also bore on whether the defendant was the first aggressor in the physical altercations, and so was relevant to the defendant's claim that he acted in self-defense.  See Commonwealth v. Clemente, 452 Mass. 295, 306 (2008), cert. denied, 555 U.S. 1181 (2009) ("The fact that a victim may have been the first aggressor is relevant to a defendant's claim of self-defense").  Viewed in context, the evidence was therefore offered, not as propensity evidence, but to provide the jury with a picture of how events unfolded, and to provide an explanation for what otherwise "could have appeared to the jury as . . . essentially inexplicable act[s] of violence."[16]  Gonsalves, supra, quoting Commonwealth v. Bryant, 482 Mass. 731, 735-736 (2019).  See Commonwealth v. Peno, 485 Mass. 378, 386 (2020), quoting Commonwealth v. Butler, 445 Mass. 568, 574 (2005) ("To be sufficiently probative the evidence must be connected with the facts of the case [and] not be too remote in time").
            It is true that, "even if offered for a permissible purpose, bad act evidence . . . is inadmissible where 'its probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk.'"  Commonwealth v. Correia, 492 Mass. 220, 228-229 (2023), quoting Mass. G. Evid. § 404(b)(2) (2023).  Here, we are not persuaded that the risk of prejudice stemming from the challenged evidence outweighed the probative value of that evidence, however.  See Commonwealth v. MacCormack, 491 Mass. 848, 863 (2023), quoting Commonwealth v. Huang, 489 Mass. 162, 174 (2022) (listing factors to be considered in assessing probative value of evidence against risk of unfair prejudice).
            Because defense counsel did not object to the bad act evidence, the judge did not "expressly weigh on the record the probative value of [that evidence] against the risk of unfair prejudice to the defendant."  Commonwealth v. Samia, 492 Mass. 135, 148 (2023).  The judge's balancing of the probative value of the evidence with the risk of unfair prejudice was, however, implicit in her admission of that evidence.  Cf. id., quoting Commonwealth v. Mahan, 18 Mass. App. Ct. 738, 741 n.1 (1984) (judge's failure to conduct balancing on record is "not fatal" because, where defendant objected to bad acts evidence, balancing "is implicit in the judge's consideration of the tender of, and the objection to, the evidence and the judge's ultimate decision to admit it").
            The judge was not asked to provide a limiting instruction and was not required to do so.  See Correia, 492 Mass. at 231 n.17, quoting Peno, 485 Mass. at 395-396 (sua sponte instruction "preferred," but not required, when judge admits bad act evidence); Commonwealth v. Teixeira, 486 Mass. 617, 629 n.7 (2021) (same).  Likewise, the challenged evidence was not cumulative of any other evidence properly admitted in the case, see MacCormack, 491 Mass. at 863, although, as we have discussed, it put other evidence in proper context.  See Gonsalves, 488 Mass. at 836.  Lastly, we discern little risk that the jury were prompted to "draw inappropriate conclusions about [the defendant's] propensity toward criminality" based on the crude comments the defendant made to Danielle, or his attempts to touch her.  Commonwealth v. Rosa, 468 Mass. 231, 241 (2014).  See id. (evidence of defendant's use of profanity in jailhouse telephone call not more prejudicial than probative).  For these reasons, even considering the defendant's near-contemporaneous comments to Danielle as prior bad acts, we cannot say that the judge abused her discretion in admitting the challenged evidence at trial.[17]  Compare Commonwealth v. Morris, 82 Mass. App. Ct. 427, 441-442 & n.14 (2012) (probative value of evidence showing that defendant called sexual assault victim "vulgar names" and threatened her outweighed risk of unfair prejudice).
            c.  Closing argument.  In closing, the prosecutor argued that the defendant had "[thrown] his mother down to the ground" as the verbal dispute in the home escalated, and that "[Elaine] was lying on the ground because the defendant, her son, had just pushed her."  The defendant did not object to the closing argument, but on appeal, contends that these were misstatements of the evidence and thus constituted an improper argument.  "Although 'counsel may argue the evidence and the fair inferences which can be drawn from the evidence,' . . . 'a prosecutor should not . . . misstate the evidence or refer to facts not in evidence'" (citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 804 (2022).  Because the defendant in this case did not object to these statements at trial, however, if the prosecutor's argument was improper, our review is for a substantial risk of a miscarriage of justice.  See Commonwealth v. Kozubal, 488 Mass. 575, 590 (2021), cert. denied, 142 S. Ct. 2723 (2022).
            We understand the defendant to challenge both the prosecutor's use of the word "throw" to describe the force of the defendant's contact with his mother, and the prosecutor's references to where he "threw" her -- "down" and "to the ground."[18]  There was no error in the prosecutor's argument about the defendant "thr[owing]" Elaine, however.  Elaine said exactly that at trial, testifying that the defendant "threw [her] into the counter," and the other witness testimony was consistent with Elaine's description.
            To the extent the prosecutor stated that the throw caused Elaine to fall to "the ground," the prosecutor's argument amounted to a literal misstatement -- Elaine explicitly stated that she did not fall to the ground, and there was no evidence that she did so.  Because this aspect of the argument was improper, our assessment of the risk that justice miscarried is guided by a familiar set of factors, including 
"whether 'defense counsel seasonably objected to the arguments at trial[,] . . . whether the judge's instructions mitigated the error[,] . . . whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters[,] . . . whether the jury would be able to sort out the excessive claims made by the prosecutor[,] . . . and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant."
Teixeira, 486 Mass. at 635, quoting Commonwealth v. Niemic, 472 Mass. 665, 673-674 (2015), S.C., 483 Mass. 571 (2019).  Applying these factors here, we discern no such risk.
            The defendant did not object to the Commonwealth's closing, and we infer from this that the defendant did not view the misstatement as particularly prejudicial to him.  See Kapaia, 490 Mass. at 799-800 (lack of objection to prosecutor's opening statement "some indication" that opening was not unfairly prejudicial [citation omitted]).  The judge then charged the jury immediately after the closing arguments, instructing them on the distinction between evidence and argument, and on their role as fact finders.  We presume that the jury followed these instructions.  See Commonwealth v. Silva, 93 Mass. App. Ct. 609, 615 (2018).
            Additionally, the prosecutor's misstatement went to a collateral matter -- where Elaine ended up as a result of the defendant's "throw" -- but the misstatement did not exaggerate the evidence about the amount of force the defendant used in touching Elaine.  The misstatement thus did not go to any central issue of the case, and we are confident that the jury were able to sort out any differences between the prosecutor's argument and the trial evidence.  See Commonwealth v. McCaffrey, 104 Mass. App. Ct. 642, 657 (2024) (prosecutor's argument not prejudicial, even if improper, where misstatement was collateral and judge gave proper final instructions).  Finally, we are satisfied that the case against the defendant was strong enough to eliminate any substantial risk that justice miscarried based on the prosecutor's argument.  See Commonwealth v. Rutherford, 476 Mass. 639, 647 (2017) ("Moreover, in light of the strength of the Commonwealth's case, . . . the prosecutor's improper and obviously hyperbolic statements were likely to have had but little effect on the jury").
Judgments affirmed.
 
 
 
            [1] On appeal, the defendant does not challenge the judge's ruling on his motion to continue the trial.
            [2] The judge sentenced the defendant to concurrent one-year terms of probation with conditions.
            [3] The defendant also filed a motion to revise and revoke his sentences.  That motion is not included in the record, however, and is not at issue in this appeal.
            [4] In the interests of maintaining the victims' privacy, we refer to them by their first names or by their relationships to each other or the defendant.
            [5] The defendant lived in a recreational vehicle on the same property.
            [6] At trial, Lawrence confirmed that the defendant made "comments," but he was not asked to provide any detail about the substance of those comments.
            [7] Lawrence testified, consistent with this, to his opinion that the defendant "was blackout drunk" at the time of the incident.
            [8] General Laws c. 263, § 6, provides, in relevant part:
"Any defendant in a criminal case other than a capital case, whether begun by indictment or upon complaint, may, if he shall so elect, when called upon to plead, or later and before a jury has been impanelled to try him upon such indictment or complaint, waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court.  If the court consents to the waiver, he shall be tried by the court instead of by a jury. . . .  [C]onsent to said waiver shall not be denied in the district court . . . if the waiver is filed before the case is transferred for jury trial to the appropriate jury session, as provided in section twenty-seven A of chapter two hundred and eighteen."
            Here, the defendant does not contend that his waiver was filed "before the case [was] transferred . . . to the . . . jury session," and the transcript does not reflect that it was filed then.  Id.
            [9] Rule 19 (a) states:
"Where the defendant has the right to be tried by a jury, the defendant may waive the right to be tried by a jury, provided that the judge determines after a colloquy that such waiver is knowing and voluntary, and the defendant signs a written waiver, which shall be filed with the court. . . .  The judge may refuse to approve such a waiver for any good and sufficient reason provided that such refusal is given in open court and on the record."
            [10] The defendant in Gebo argued that the judge's concerns about judge shopping were unwarranted, and that she was not attempting to use the jury waiver for that purpose.  See Gebo, 489 Mass. at 771.  The court, however, having noted that "[u]nlike a reviewing court, a presiding judge is able to observe a defendant and his or her attorney firsthand and therefore is in the best position to determine whether a jury waiver is sought to obtain some unfair advantage," id. at 766, deferred to the trial judge's assessment.  See id. at 771.
            [11] The docket entry for March 13, 2023, shows that the judge immediately issued a bench warrant for the defendant's arrest; it also shows that the defendant appeared in court voluntarily later the same day.
            [12] Although the defendant was not guaranteed a continuance by filing a jury waiver on the day of his jury trial, it was a plausible strategy in light of judges' appreciation of jurors as limited and valuable resources.
            [13] Additionally, to the extent that the defendant's misuse of his jury waiver would have resulted in wasted juror time, the judge's denial of the waiver minimized the risk of unnecessarily "undermin[ing] public confidence in," and "incit[ing] public cynicism" toward, the jury system.  Gebo, supra 767-768.
            [14] Immediately after each of the verdicts was announced in open court, the jury affirmed their verdicts on the record.  In July 2023, however, the judge notified the parties that one of the jurors had provided the following comment to the Office of the Jury Commissioner:
"5/2/23:  Deliberation was very short, all evidence and all testimonies on the witness-stand were not discussed, the deliberation was a rush to judgement [sic].  Cherry picking evidence is not a technique I would advise in a deliberation.  I was ashamed of the verdict.  Please make sure [the trial judge] sees my comments."
            [15] On appeal, the defendant argues that no such explanation was necessary where "[t]he lunging toward Lawrence was caused because [the defendant] was asked to leave, and the pushing of Elaine was caused because she tried to get between her son and husband."  The defendant did not argue at trial that the defendant's "lunging" was triggered by his being asked to leave the house, however.  Additionally, even had he done so, the Commonwealth was entitled to offer evidence of alternative explanations for this behavior.  See Commonwealth v. Colleran, 452 Mass. 417, 426 (2008) (no error in allowing Commonwealth to present evidence inconsistent with defense's theory of case).
            [16] Moreover, the challenged evidence here was "probative of the defendant's animus toward the victims," Commonwealth v. Hinds, 494 Mass. 681, 682 (2024), which bore on his motive for his acts.  At trial, Elaine testified that before hitting Lawrence, the defendant "told him how much he hated him."
            [17] Given our conclusion, we need not separately consider the defendant's argument that, if the challenged evidence did not amount to "bad acts," it was still improperly admitted because its probative value was "substantially outweighed" by the risk of unfair prejudice that it presented.
            [18] We understand the prosecutor to have been referring to the kitchen floor.