COMMONWEALTH *vs.* TROY D. LASSITER.

No. 09-P-1902.

Bristol. January 6, 2011. - August 16, 2011.

Present: BERRY, WOLOHOJIAN, & HANLON, JJ.

*Jury and Jurors. Practice, Criminal,* Verdict, Deliberation of jury, Jury and
    jurors, Argument by prosecutor.

At the trial of a criminal complaint charging the defendant with, inter alia,
    operating a motor vehicle while under the influence of alcohol, third of-
    fense, in violation of G. L. c. 90, § 24(1)(*a*)(1), the judge erred in striking
    the jury's verdict of guilty based on a juror's post hoc statement that he
    disagreed with the verdict, where the verdict had been affirmed by the
    jurors and recorded by the clerk; however, where the judge then instructed
    the jury to deliberate on the charge a second time (thus giving the defend-
    ant a second chance to be acquitted), the error clearly inured to the defend-
    ant's benefit and did not create a substantial risk of a miscarriage of
    justice. [129-131]
At a criminal trial, the prosecutor's repeated references in closing argument to
    "responsibility," which improperly appealed to the jury's sense of justice
    and retribution, did not result in a substantial risk of a miscarriage of
    justice, where the prosecutor's language was not so rousing or inflamma-
    tory as to sweep the jury beyond rational examination of the evidence;
    where the jury's acquittal of the defendant on one charge suggested that
    they were not in fact swayed by the prosecutor's excesses; where the judge
    instructed the jury that closing arguments were not evidence; and where
    the Commonwealth's case was strong. [131-133]

COMPLAINT received and sworn to in the New Bedford Divi-
sion of the District Court Department on June 11, 2008.

The case was tried before *Therese M. Wright,* J.

*Susan F. Damiano* for the defendant.

*Kristen L. Spooner,* Assistant District Attorney, for the
Commonwealth.

WOLOHOJIAN, J. The defendant was tried before a jury on a
complaint charging him with negligent operation of a motor
vehicle, in violation of G. L. c. 90, § 24(2)(*a*), and operating a

motor vehicle while under the influence of alcohol (OUI), third offense, in violation of G. L. c. 90, § 24(1)(*a*)(1). The jury returned a verdict of not guilty on the negligent operation charge and guilty on the OUI charge. The verdicts were recorded, and the jury were asked to return to the jury room. They were not, however, formally discharged because it was not yet known whether the defendant would waive having the subsequent offense portion of the OUI charge tried to the jury. Once informed that the defendant intended to stipulate to the subsequent offense, the judge went to the jury room to thank the jurors for their service. During that conversation, the judge learned that the verdict may not have been unanimous. On her own initiative, but without objection from either side, the judge then struck the OUI verdict and instructed the jury to redeliberate on that charge. The next day, after receiving the *Tuey-Rodriquez* instruction, see *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 98-101 (1973); *Commonwealth* v. *Tuey,* 8 Cush. 1, 2-4 (1851), the jury again found the defendant guilty. We are asked on appeal to consider whether this sequence of events created a substantial risk of a miscarriage of justice.[1] Concluding that it does not, we affirm the conviction.

1. *Redeliberation of OUI charge. a. Background.* As noted above, the jury returned verdicts of not guilty on the negligent operation charge and guilty on the OUI charge.[2] Following our traditional procedure, the clerk called for the jurors' oral affirmation of the verdicts.[3] See *Commonwealth* v. *Martell,* 407 Mass. 288, 292 n.4 (1990). No juror manifested any disagreement or dissent.[4] The clerk recorded the verdicts on the docket sheet, and the judge excused the jury from the courtroom so

---

[1] The defendant also argues that errors in the prosecutor's closing created a substantial risk of a miscarriage of justice, and that he was deprived of effective assistance of counsel.

[2] The verdicts were returned after approximately thirty minutes of deliberation.

[3] "Members of the jury, hearken to your verdict, as the Court has recorded it. You, upon your oaths, do say the defendant is not guilty on the negligent operation of a motor vehicle, and guilty of the OUI liquor. So say, Mr. Foreman? So say you all members of the jury?" This form of inquiry has been the settled custom and form of inquiry since at least 1878. *Commonwealth* v. *Tobin,* 125 Mass. 203, 206 (1878).

[4] The trial transcript does not record the jurors' responses to the call for affirmation of the verdicts. However, the transcript reflects the judge's

that she could ascertain whether the defendant wanted to try the subsequent offense portion of the charge to the jury. See *Commonwealth* v. *Pelletier*, 449 Mass. 392, 396 (2007).

After a brief recess, defense counsel informed the judge that the defendant would stipulate to the subsequent offense and waive trial on that portion of the charge. The judge then told counsel she would go to the jury in order to release the jurors, and that she would return to conduct a colloquy with respect to the subsequent offense. Seventeen minutes later, the judge returned to the courtroom and stated:

> "[A]fter the jury was excused, I went to release them, and . . . one of the jurors, unsolicited, raised their hand and asked if he could ask me a question, and I said yes. And his statement to me, in so many words, was that he felt that the defendant on the, I assume charge that they found him guilty on, the OUI, was not guilty and intimated that that wasn't — he didn't feel that the defendant was guilty, and he suggested that another juror felt the same way, although no other juror stepped forward to mention that.

> "The Foreperson of the jury then indicated that although there was that initial discussion, that they all voted and that they unanimously agreed. That gives me, though, enough pause to at least have some concern that the verdict that they reported as a unanimous guilty verdict was not, in fact, unanimous. I can't say that for sure, because according to the foreperson, they all voted in one manner, but there was enough brought to my attention unsolicited that perhaps it was not a unanimous verdict.

> "So what I am going to do is I'm [going to] have the jury come back in. I'm going to tell the jury that I am concerned that their verdict on that particular charge may not be unanimous, and I'm going to send them back out to deliberate again, to determine whether, in fact, they can reach a unanimous verdict. As to the operating to endanger charge, that's recorded as a not guilty and that will remain."

contemporaneous observation "that the [OUI] verdict they reported [was] a unanimous guilty verdict." The defendant's brief characterizes the verdicts as "affirmed and recorded," and neither party has suggested that any juror indicated disagreement with the verdict at the time it was recorded.

Consistent with this, the judge had the jury brought into the courtroom, informed them of her concerns and intention to set aside the first verdict, and instructed them to resume deliberations on the OUI charge:

> "Ladies and gentlemen, I've brought you back into the courtroom. I have just explained to the attorneys that I did go to say good bye to you informally after your verdicts on this case, and it was brought to my attention that there may have not been a unanimous verdict with respect to the charge of operating under the influence of alcohol. There may have been, there may not have been, but it — there was enough of a concern brought to my attention when I went to speak with you and bid you farewell, that it causes me some concern that your verdict may not have been unanimous.
>
> "So with respect to the negligent operation of a motor vehicle charge, that you recorded as a not guilty verdict and that has been recorded by the court. As to the operating under the influence of alcohol charge, I — as I told you, your verdict, whether it be guilty or not guilty, must be unanimous, and I want to assure the parties, and everyone involved in this case and the court, that, in fact, you reach an animou — a unanimous verdict. So what I'm [going to] do at this point, although you have recorded a verdict, I'm going to strike it at this point and I'm going to ask you to resume your deliberations to determine whether, in fact, you have reached or can reach a unanimous verdict on this charge. All right.
>
> "So we're [going to] prepare another verdict slip for that particular charge. I'm [going to] send you back into the jury room, and I'm [going to] ask you to listen to each other and to talk to each other, and no one has to, you know, unfairly influence or so forth, any other ver — juror's particular vote, but ultimately it is the Court's wish and, in fact, it is the rule of our law that you reach a unanimous verdict, all of you, one way or another. And I [want to] assure the parties that that, in fact, is done in this case. So because of what was brought to my attention in the jury room, I'm going to ask you to again resume deliberations on this particular charge."

The clerk made no notation of the judge's actions on the docket sheet but wrote "stricken by the court" on the OUI verdict slip. At no point during this sequence of events did the judge ask to hear from counsel, nor did counsel for either party raise any objection.

Within ten minutes of resuming deliberations, the jury sent the judge a note reporting that they "[could] not come to a verdict today." The judge decided to release the jury for the night. Upon reconvening the following morning, the Commonwealth raised an objection to the judge's decision to strike the OUI verdict and to have the jury redeliberate that charge.[5] The judge noted the objection and stated that she would proceed as planned. The judge then gave the jury a *Tuey-Rodriquez* charge, see *Commonwealth* v. *Rodriquez*, 364 Mass. at 98-101, and instructed them to resume their deliberations. Approximately twenty minutes later, the jury returned with a guilty verdict on the OUI charge. This second verdict was affirmed and recorded by the clerk on the docket.[6] Subsequently, the defendant orally moved for a mistrial, essentially on the ground that the second guilty verdict had been coerced. That motion was denied.

b. *Discussion.* Both sides argue that the sequence of events described above resulted in various errors. The defendant argues that the judge erred when she failed to declare a mistrial after striking the first OUI verdict and that the error resulted in a substantial risk of a miscarriage of justice. He also argues that his counsel's failure to demand a mistrial constituted ineffective assistance of counsel. The Commonwealth argues that the judge

[5]The prosecutor stated, "I did have an opportunity to speak to our Appeals Unit, and it is their position that the verdict was already entered and affirmed by the jurors, because one juror had a reservation later on, does not nullify the fact that they found him guilty of the charge of operating under the influence. For the record, the Commonwealth is expressing that position and does express [there is] no need for any further deliberations since that was the verdict of the jury."

[6]At this point, the docket sheet showed two guilty verdicts on the OUI charge because the judge's striking of the first verdict had never been noted. The clerk should have noted the striking of the first verdict on the docket sheet in addition to noting it on the verdict slip. See *Commonwealth* v. *Powers*, 21 Mass. App. Ct. 570, 571, 574-575 (1986) ("[V]erdict slips are of no binding legal significance"). However, nothing in our opinion turns on the docketing irregularity.

erred in striking the first verdict and that all subsequent actions by the judge were legal nullities.

Once a verdict has been affirmed by the jurors and recorded by the clerk, a judge is generally precluded from inquiring into alleged improprieties in the jury's deliberations or decision-making. See *Commonwealth* v. *Brown*, 367 Mass. 24, 28 (1975); *Commonwealth* v. *Fidler*, 377 Mass. 192, 196-198 (1979); *Commonwealth* v. *Martell*, 407 Mass. at 294-295.[7] "Juror testimony concerning the mental processes of jurors during deliberations . . . is not permitted to impeach a verdict." *Cassamasse* v. *J.G. Lamotte & Son, Inc.*, 391 Mass. 315, 317-318 (1984). See *Commonwealth* v. *Pytou Heang*, 458 Mass. 827, 858 (2011). See also Mass. G. Evid. § 606(b) (2011).

Thus, a judge generally cannot inquire into, or set aside, a recorded verdict on account of a juror's post hoc statement that he or she disagreed with the verdict. See *Commonwealth* v. *Dias*, 419 Mass. 698, 702-703 (1995); *Commonwealth* v. *Pytou Heang, supra*. "Tension between jurors favoring guilt and those favoring acquittal is part and parcel of the internal decision-making process of jury deliberations." *Commonwealth* v. *Mahoney*, 406 Mass. 843, 855 (1990). "Whatever disagreement that a juror may have secretly entertained but did not indicate in open court may not be the basis for reversal." *Commonwealth* v. *Lawson*, 425 Mass. 528, 532 (1997). Once the juror affirms or acquiesces in the verdict as announced in open court, then "neither [his] change of heart nor [his] subsequent disclosure of a subjective disagreement with [his] apparent vote provides a basis for vacating the verdict." *Commonwealth* v. *Dias, supra* at 703.

Applying these principles, we conclude that the judge erred when she struck the first recorded verdict.[8] "The jury's verdict was apparently unanimous, and any juror's inadequately dis-

---

[7]Conversely, where a verdict has not yet been affirmed and recorded, the trial judge has discretion to poll the jury and either set the verdict aside or send the jury out for further deliberations. See *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831); *Commonwealth* v. *Brown*, 367 Mass. at 28; Mass.R.Crim.P. 27(d), 378 Mass. 897 (1979).

[8]Although the judge erred in this regard, she did so out of concern for an accurate verdict and fair treatment of the defendant. The judge was correct to place her concerns on the record in the presence of all counsel. See *Com-*

closed, subjective disagreement with the verdict as announced cannot be the basis for vacating it . . .'' (footnote omitted). *Commonwealth* v. *Dias, supra* at 701-702.

The defendant argues that the judge should have sua sponte declared a mistrial after striking the first verdict and that the failure to do so created a substantial risk of a miscarriage of justice. The error lay, however, not with the failure to declare a mistrial but with the striking of the verdict in the first place. That error clearly inured to the defendant's benefit, giving him a second chance to be acquitted.[9] No harm flowed thereafter, not least because the defendant was ultimately no worse off than if the error had never occurred.[10]

Because there was no harm to the defendant in this case, we need not reach the Commonwealth's argument that the procedure the judge followed resulted in a legal nullity. The Commonwealth properly notes that ''once the jury have been discharged, they have no further power to deliberate or to agree to a verdict.'' *Commonwealth* v. *Brown*, 367 Mass. at 28. Whether the jury were ''discharged'' in the circumstances of this case is a question we need not reach.

2. *Closing argument by the prosecutor.* The defendant argues that the prosecutor's repeated references to ''responsibility'' improperly appealed to the jury's sense of duty.[11] We set out the challenged portions of the closing in the margin.[12]

The aggregate effect of the challenged remarks was to sug-

monwealth v. *Pytou Heang*, 458 Mass. at 859. But then the judge should have given counsel an opportunity to be heard. *Ibid.*

[9]The defendant's trial counsel made a reasonable strategic choice to seize the opportunity for a second chance at a not guilty verdict from a jury of six containing at least one member possibly inclined to acquit. See *Commonwealth* v. *Acevedo*, 446 Mass. 435, 442 (2006).

[10]Reaching the conclusion we do, we also reject the defendant's argument that his counsel's failure to request a mistrial after the first verdict was struck constituted ineffective assistance of counsel.

[11]The defendant also argues that the prosecutor's closing argument misstated the Commonwealth's burden of proof and commented on the defendant's failure to testify. We conclude that the closing argument was improper, but not for these reasons. See and compare *Commonwealth* v. *Gouveia*, 371 Mass. 566, 570-571 (1976); *Commonwealth* v. *Pagano*, 47 Mass. App. Ct. 55, 62 (1999), cert. denied, 528 U.S. 1089 (2000).

[12]''At some point in time, this defendant has to take responsibility for his actions. He admitted, by his own admission, to the officer, had something to

gest that the jury should convict the defendant because he had failed to take responsibility for his actions, and because the police officer had acted responsibly when he pulled the defendant over. In this sense, the prosecutor improperly appealed to the jury's sense of justice and retribution. See *Commonwealth* v. *Torres*, 437 Mass. 460, 464-465 (2002) (improper to exhort the jury to "answer the call for justice and hold [the defendant] accountable for what he did"); *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 53 (2003) (improper to comment "[n]ow is the time for justice"). Cf. *Commonwealth* v. *Freeman*, 430 Mass. 111, 120 & n.6 (1999) (proper to comment that it was "about time . . . [the defendant] had to accept responsibility for his actions" because criminal responsibility was in issue).

Because there was no objection, we review to determine whether the improper argument resulted in a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bonds*, 445 Mass. 821, 836 (2006). Considered "in the context of the entire argument, the judge's instructions to the jury, and the evidence at trial," *Commonwealth* v. *Ruiz*, 442 Mass. 826, 835 (2004), we conclude that it did not. The prosecutor's language, while ill-chosen, was not so rousing or inflammatory as to sweep the jury beyond rational examination of the evidence. Compare *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 292-296 (1990); *Commonwealth* v. *Garcia*, 75 Mass. App. Ct. 901, 901-903 (2009). The fact that the jury acquitted the defendant of negligent operation suggests that they were not in fact swayed by the prosecutor's excesses. See *Commonwealth* v. *Bly*, 444 Mass. 640, 656 (2005). Moreover, the judge instructed the jury that

---

drink, alcohol . . . . At some point in time, he has to own up to the fact that he was intoxicated . . . . The officer had to do his job, because it is his responsibility to get people that are suspected of being under the influence of alcohol off the street. The officer followed through with his responsibility. . . . He [the defendant] looks — stares straight ahead, as if none of this is happening. Nothing outside his world is happening. Nothing outside his intoxication is happening. He's not taking responsibility for anything . . . . And it is after the officer sees this cigarette burning a hole into the fabric, and this defendant not reacting, that the officer again took responsibility for his safety, removed the lit cigarette from his lap to avoid him being injured . . . . The officer took responsibility for the safety of the pedestrians out there, and he placed this defendant under arrest. Make this defendant responsible for his actions for drinking, for using drugs, before getting behind the wheels of that car and operating on the streets of Fairhaven, the street where the public has access."

the closing arguments were not evidence, and that they were to reach a verdict fairly, impartially, and without regard to the characteristics of the offense or the defendant. See *Commonwealth* v. *Kee*, 449 Mass. 550, 560 (2007). These factors, together with the strength of the Commonwealth's case,[13] lead us to conclude that the erroneous closing did not give rise to a substantial risk of a miscarriage of justice.[14]

*Judgment affirmed.*

---

[13]The Commonwealth's evidence included the defendant's admission that he had been drinking, and the officers' observations of the defendant's erratic and dangerous driving, catatonic-like behavior, glassy eyes, slurred speech, and physical unsteadiness.

[14]The defendant's claim that his counsel was ineffective for failing to object to the closing fails for similar reasons. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994).