NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1035

COMMONWEALTH

vs.

MATTHEW LARIVIERE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Matthew Lariviere, was convicted of voluntary manslaughter.[1]  He argues on appeal that an instruction regarding the use of excessive force in self-defense constituted error that created a substantial risk of a miscarriage of justice, and that various comments by the prosecutor in closing argument warrant reversal of the conviction and a new trial.  We affirm.

---

[1] A grand jury indicted the defendant for murder, carjacking, two counts of armed robbery, and negligent operation of a motor vehicle.  The judge allowed the defendant's pretrial motion to sever the murder charge from the other charges, and the jury returned a guilty verdict on the lesser included offense of voluntary manslaughter.  The defendant subsequently pleaded guilty to the remaining charges.

Background.  In 2019, the defendant, the victim,[2] and others lived in a "homeless encampment" (camp) in New Bedford in a wooded area behind a general supply building.  On August 5, 2019, the victim was upset because he could not locate a bag containing his belongings.  Believing that his bag had been stolen, he threatened to "kill everybody" at the camp and threatened to "stab everybody."  Later that night, Troy Serpa, who lived at the camp and knew both the victim and the defendant, heard someone say, "Oh God," followed by a gargling sound.  Serpa then saw the defendant "running out of the bushes after having a fight," and the defendant "said he had stabbed [the victim] six times, once in the throat."

The next morning the defendant told Serpa that the victim's body was "[i]n a tarp," and asked Serpa to help him "get rid" of the victim's body.  The defendant subsequently asked Kevin Rioux, Serpa's cousin who also stayed at the camp, for some bleach.  Rioux purchased bleach and brought it back to the camp.  That same day, August 6, 2019, Rioux reported that there was "a body in the woods."  Police officers searched the camp, but did not find a body.

---

[2] The victim, Robert Jones, also went by the name "Lawrence."

2

Also on August 6, 2019, police officers were dispatched to look for a 2005 gray Toyota Corolla. They located the vehicle and attempted to effectuate a stop, but the vehicle sped away. After chasing the vehicle and then the driver on foot, officers stopped and arrested the driver who was identified as the defendant. In the Toyota, officers located a "pink-camouflage knife" on the driver's seat. Testing confirmed the presence of blood in the "recess area" of the knife "where the blade goes into the handle."

On August 8, 2019, officers found the victim's body in a "trash area" in the camp located underneath tents, blankets, and a tarp. A knife protruded from the side of the victim's neck. The body showed signs of decay and had "maggots on it." On August 9, 2019, officers searched the area of the camp where the defendant lived, and found cleaning materials including a bottle of bleach that "was not full." They also found a bag containing clothing with red and brown stains and a "camouflaged-handled knife." The bag had a strong odor of bleach. Finally, officers found a steak knife with a black-colored handle inside the defendant's tent.

The medical examiner observed at least 137 "sharp-force injuries" on the victim's body. These included "incised" and "stabbed" wounds all over the victim's body including his head,

3

arms, neck, legs, and torso.  Various wounds penetrated his lung, liver, and heart.  Some wounds were wider than others, some deeper than others.  The medical examiner opined that "[m]ultiple sharp-force injuries" caused the victim's death, but could not discern which injuries, if any, may have occurred post mortem.

The defendant testified at trial that he acted in self-defense after the victim entered his tent and attacked him.  He further claimed that he was experiencing drug-induced paranoia, had been on a "crack bender," and had not slept in days.  A defense expert testified that the defendant suffered from a substance-induced psychotic episode exacerbated by diabetes at the time of the homicide, which resulted in irrational behaviors.

Discussion.  1.  Jury instruction.  The defendant acknowledges that he "undeniably used excessive force by stabbing [the victim] over 100 times."  He contends, however, that the judge's instructions on self-defense were inadequate because he failed to tell the jury that the use of excessive force must cause the death for there to be a crime.  The defendant relies on Commonwealth v. Carlino, 429 Mass. 692, 694 (1999), to support the proposition that the jury must have been instructed that if the defendant used excessive force in an

otherwise appropriate exercise of self-defense, and if death resulted from that use of excessive force, he should be found guilty of manslaughter; but if the excessive force did not cause the death, then there could be no crime.  Otherwise stated, the defendant argues that the jury could have found that he killed the victim with one or two blows in response to the victim's attack, and that he inflicted the remaining excessive blows post mortem.  The defendant accordingly argues that a properly instructed jury could have determined that he acted in proper self-defense, by concluding that the excessive force did not cause the victim's death.

In the present case, we are not persuaded.  While we do not exclude the possibility that on a different trial record the evidence may warrant an instruction along the lines now suggested by the defendant on appeal, we hold that on the present record such an instruction was neither required nor warranted.

We first note that the defendant did not object at trial to the judge's instructions on self-defense, excessive force, or manslaughter.  Indeed, defense counsel advised the judge that he was content with the jury instructions.[3]  Accordingly, we review

---

[3] In response to a subsequent jury question asking the judge to, inter alia, "go over self-defense," the judge reinstructed the jury on self-defense, the use of excessive force in self-

5

his claim to determine first whether there was error, and if so, we then inquire whether the error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). A substantial risk of a miscarriage of justice exists only when an appellate court has "a serious doubt whether the result of the trial might have been different had the error not been made" (citation omitted). Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

Here, we discern no error. The defendant's theory that he killed the victim with one or two blows and inflicted the remaining 135 or 136 blows post mortem "is entirely speculative." Commonwealth v. Pina, 481 Mass. 413, 424 (2019). The evidence at trial provides nothing to support the claim that the victim died from one or two initial stab wounds, and "a judge should not instruct the jury 'on a hypothesis not supported by the evidence.'" Id. at 422, quoting Commonwealth v. Vanderpool, 367 Mass. 743, 746 (1975). That the medical examiner could not determine when the blows were struck, or the timing of each injury, does not alter our conclusion that the theory now advanced on appeal constitutes speculation unsupported by evidence at trial. To the contrary, the medical

---

defense, manslaughter, reasonable doubt, and the presumption of innocence. Here again, the defendant did not object to these instructions.

6

examiner opined at trial, to a reasonable degree of medical certainty, that "[m]ultiple sharp-force injuries" caused the victim's death.  Thus, to the extent that there was evidence at trial regarding the cause of death, it ran contrary to the defendant's appellate claim.

Furthermore, as the defendant acknowledges, the judge's comprehensive instructions tracked the Supreme Judicial Court's Model Jury Instructions on Homicide 21-40 (2018) almost verbatim.  Those instructions conveyed that the Commonwealth had the burden to prove beyond a reasonable doubt that the defendant caused the victim's death; that the defendant did not act in proper self-defense; and that where the Commonwealth proved the requisite elements, but the defendant used more force than was reasonably necessary, then the defendant shall be found guilty of manslaughter.  The instructions were clear and accurate, and we presume the jury followed them.  See Commonwealth v. Morgan, 422 Mass. 373, 379-380 (1996).  See also Commonwealth v. Marinho, 464 Mass. 115, 122 (2013) ("We evaluate jury instructions as a whole, and interpret them as would a reasonable juror. . ." and "do not require that judges use particular words, but only that legal concepts are properly conveyed").

Finally, even assuming arguendo that the judge should have provided the instruction now requested on appeal, the absence of that instruction did not create a substantial risk of a miscarriage of justice. In view of the strength of the Commonwealth's case and the comprehensive jury charge, the alleged error was not "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error" (citation omitted). Alphas, 430 Mass. at 13. Cf. Commonwealth v. Torres, 420 Mass. 479, 492-493 (1995) (no substantial likelihood of miscarriage of justice where "record shows that the jury's verdict of deliberately premeditated murder in the first degree 'would have been substantially unsullied' by any alleged error in the judge's instructions concerning excessive force in self-defense" [citation omitted]).

2. Closing argument. The defendant claims that various errors in the prosecutor's closing argument constituted prejudicial error, warranted a mistrial, or created a substantial risk of a miscarriage of justice. The claims are unavailing.

We consider the challenged statements "in the context of the entire closing," the judge's instructions to the jury, and the evidence at trial. Commonwealth v. Martinez, 476 Mass. 186,

8

198 (2017).  "A new trial will be ordered only in the extraordinary situation where, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated" (citation omitted).  Commonwealth v. Azar, 435 Mass. 675, 687 (2002).

We begin with the preserved claims on appeal.  First, the defendant objected at trial to the prosecutor's contention that "[t]here were multiple knives" in evidence and that the jury could "infer from the holes in [the victim's] body, the size of the wounds the medical examiner testified about in [] depth[,] that more than one knife was potentially used."  The defendant claims that these statements were incorrect because the medical examiner testified that she could not discern the type, length, or width of the knife that was used to kill the victim and could not testify as to whether more than one sharp-force instrument was used.  He further claims that the prosecutor's statements were highly prejudicial because the notion that the defendant somehow paused to "change knives suggests a level of malice and bloodthirstiness not apparent elsewhere in the record and which was sure to turn the jury against the [defendant]."  In view of the recovery of multiple knives (one from the victim's neck, one from the bag with the bloody clothing and bleach, and one in the vehicle in which the defendant fled from police officers), the

9

medical examiner's testimony that she could not "rule out whether more than one [knife] was used," and the evidence of differing measurements for different injuries to the victim, "[s]ome wider than others, some deeper than others," the prosecutor's argument constituted a reasonable inference to draw from the evidence. See Commonwealth v. Goddard, 476 Mass. 443, 449 (2017) (in closing argument prosecutor "may analyze the evidence and suggest what reasonable inferences the jury should draw from" it; inferences need only be reasonable and possible not necessary and inescapable). We further note that the defendant argues that the alleged misstatement was prejudicial in that it suggested a higher level of malice than justified by the evidence. This claim of prejudice is undermined where, as here, the jury convicted the defendant of manslaughter, a killing without malice. See Commonwealth v. Acevedo, 446 Mass. 435, 443 (2006) ("Voluntary manslaughter is an unlawful killing arising not from malice. . ." [quotation and citation omitted]).

The defendant also objected to the prosecutor's argument to the effect that the defendant blamed others for the killing and the circumstances leading to the killing, using the statement that "it was someone else's fault." The defendant contends that the prosecutor misrepresented his testimony at trial. We disagree. There were various instances of conflicting testimony

10

at trial where the defendant's testimony could be interpreted as shifting responsibility toward others. For example, the defendant testified that Rioux "went to go buy bleach" and returned with it yet the defendant denied that he had asked Rioux to do so. He also testified that Rioux, in effect, took control of disposing of the victim's body. This testimony conflicted with other evidence at trial. Viewed in context, the prosecutor's statements constituted a fair summary of the evidence. See Goddard, 476 Mass. at 449.

In addition, the defendant objected to the following argument by the prosecutor:

> "The presumption of innocence does apply to the defendant, sure. But just like any other witness that takes that stand you get to judge their credibility. He's not presumed truthful. He doesn't get extra protection when he testifies. He gets the same treatment as everyone else who testifies. The judge is going to instruct you to look, how does a witness behave on the stand? You got to see [the defendant]. You remember. Does his memory seem accurate?"

While it may have been preferable to avoid the phrase "[h]e's not presumed truthful," we do not agree that this statement equated to a direct attack on the presumption of innocence. Viewed in context, the prosecutor did not err by urging the jury to evaluate the defendant's credibility as a witness. See Commonwealth v. Wright, 107 Mass. 403, 404 (1871) (jury instruction rightly conveyed that "there is no presumption either way as to the truthfulness of a defendant's testimony,"

11

"that [defendant's] testimony was to be considered and weighed by [jurors], taking all the circumstances of the case and all the other evidence into consideration," and that jurors were to give "such weight to the testimony as in their judgment it ought to have"). We also note that the judge's instructions on the presumption of innocence were clear, forceful, and unequivocal. We discern no error and, in any event, no prejudice resulting therefrom.

The defendant further claims that various statements in the Commonwealth's closing argument constituted error that created a substantial risk of a miscarriage of justice. Two of these contentions warrant comment.[4]

First, the prosecutor argued that the disposal of the victim's body was inhumane; that the defendant covered the victim's body in a tarp, and then "put all the bloody clothing in trash and covered it in bleach." These comments were not improper. However, the prosecutor then stated that Serpa "didn't want to see that. [Serpa] didn't want to touch [the victim]. He was covered in maggots surrounded in trash." In a trial charging first degree murder, the prosecutor could comment

---

[4] The remaining arguments regarding the Commonwealth's closing argument involve unpreserved claims where there was no error. Even assuming arguendo that there was a minor error, nothing came close to creating a substantial risk of a miscarriage of justice.

on the callous disposal of the victim's body.  See Commonwealth v. Gardner, 479 Mass. 764, 775-776 (2018).  Such evidence was relevant to show, inter alia, consciousness of guilt, malice, and extreme atrocity or cruelty.  However, it was improper to argue that a witness did not want to see or touch a dead body covered in maggots.  That comment was not relevant to the above-mentioned issues at trial or to the critical issue of self-defense.

Second, we agree that the prosecutor erred by stating that the defendant testified that upon entering the defendant's tent the victim said, "I'm not here for my bags."  The defendant's testimony does not reflect that statement.  Nonetheless, these errors, viewed in the context of the closing arguments as a whole and in view of the evidence at trial, did not create a substantial risk of a miscarriage of justice.  The judge instructed the jury five times that closing arguments are not evidence.  He further instructed the jury that the defendant is entitled to a verdict based solely on the evidence and not based on pity or sympathy for the deceased; and that the jury "can't find facts or base [its] decision on sympathy, anger, passion or prejudice, or pity for or against either side in this case." See Commonwealth v. Anderson, 445 Mass. 195, 209-210 (2005) (judge "mitigated any potential prejudice" by instructing

13

jurors, inter alia, "not to base their verdicts on any sympathy or emotion"). See Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015) ("jury are presumed to follow instructions").

That the defendant did not object to the prosecutor's statements at trial also "tends to support the inference that the prosecutor's misstatement was not so egregious and prejudicial as [he] now claims." Commonwealth v. Maynard, 436 Mass. 558, 571 (2002). Of further note, "[w]e ascribe a certain level of sophistication to the jury, and, [on this record], have little doubt that they would not have been swayed by this [misstatement]" (quotation and citation omitted). Commonwealth v. Kapaia, 490 Mass. 787, 805 (2022). We also note the overwhelming evidence supporting the jury's verdict. Finally, the jury acquitted the defendant of murder and found the defendant guilty of the lesser included charge of voluntary manslaughter. See Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011) (that jury acquitted defendant of certain charges "suggests that they were not . . . swayed by the

prosecutor's excesses").  Therefore, appellate relief is not warranted.

Judgment affirmed.

By the Court (Neyman,
Ditkoff & Englander, JJ.[5]),

Clerk

Entered:  November 14, 2025.

---

[5] The panelists are listed in order of seniority.