NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-723

COMMONWEALTH

vs.

RONNIE E. PHILLIPS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Boston Municipal Court, the defendant, Ronnie E. Phillips, was convicted of two counts of assault and battery on a family or household member.[1]  He argues on appeal that (1) the judge erred in admitting in evidence medical records containing inadmissible hearsay; (2) his motion for a required finding of not guilty should have been allowed; and (3) the prosecutor's comments in closing argument created a substantial risk of a miscarriage of justice.[2]  We affirm.

_____

[1] The defendant was found not guilty of assault and battery by means of a dangerous weapon (to wit a hammer).

[2] In his brief, the defendant also argued that the judge erred in permitting the victim to testify to certain statements made by the defendant to her shortly after the assaults.  At oral argument, however, he acknowledged that the defendant's

Background.  In 2018, the defendant and the victim met online and started dating.  They dated for "[o]ver a year."  On May 18, 2019, they were driving together, and an argument occurred.  The defendant accused the victim of cheating, and he yelled at her, belittled her, and at some point, he "smacked" her "across the face."  In response, the victim grabbed and scratched him.  As a result, the defendant "got more enraged," grabbed a hammer from the back seat of the vehicle and struck the victim on the head with it.  At some point, he had taken the victim's cell phone and placed it under his leg.  The defendant stayed in the car, refused to return the cell phone to the victim, "[a]nd that's basically why [she] stayed in the car" with him.  Soon thereafter, the defendant drove to a beach and parked the vehicle.  After the victim tried to "grab [the cell phone] from him," the defendant punched her in the face three times, bit her face, and threw the cell phone into the water.

The victim then got out of the car, saw another car at the beach, realized that she was bleeding, and spoke to a person in that car.  She asked him to call 911, but the defendant "c[a]me up behind" her.  She told the person in the other car to

statements were admissible.  We agree with this concession, as the statements were admissible as statements of a party opponent, which are not hearsay.  See Commonwealth v. Allison, 434 Mass. 670, 676 n.5 (2001); Mass. G. Evid. § 801 (d) (2) (A) (2022).

2

discontinue the call, and testified she did so because she was "in fear for [her] life." The defendant told the victim "to come with him because he was going to be arrested and that no one's going to believe [her], and [they're] both going to be arrested." The victim then went with the defendant to his house. There, the defendant told her that he had "blacked out." He also tried to help her clean herself up from the injuries that he had inflicted and told her to say that she "was mugged while [she] was out of town" if asked about her injuries.

The day after the incident, the victim's mother took photographs of the victim's injuries.[3] Approximately two weeks later, on June 2, 2019, the victim reported the incident to the police. She waited to disclose the incident to police because she was in fear due to the "aggressiveness of the assault." On June 7, the victim went to a hospital because she "still had a lot of swelling in [her] face," and still had a lot of pain. Copies of the medical records from her hospital visit were admitted in evidence as an exhibit.

The defense used cross-examination of the victim and closing argument to argue that the victim was not credible; that the medical records did not demonstrate that the victim had

---

[3] Copies of photographs depicting the victim's injuries and the victim's bloody clothing were admitted in evidence as exhibits at trial.

sustained serious injuries; that the photographs depicting her alleged injuries and the bloody clothing were not dated; that her clothing was not subjected to any forensic analysis; and that she delayed in contacting the police and going to the hospital despite myriad opportunities to do so.  Furthermore, defense counsel referenced the medical records in closing argument and contended that "you'll see there's really no injury. . . .  There's nothing there.  Absolutely nothing."

Discussion.  1.  Admission of medical records.  The defendant contends that the judge erred in admitting the victim's medical records because the records contained inadmissible statements, such as references to the victim having been assaulted.  The admissibility of the medical records was raised pretrial via the Commonwealth's motion in limine to admit the medical records.[4]  After hearing from both parties, the judge allowed the Commonwealth's motion, subject to the parties agreeing on redactions.  Defense counsel subsequently argued that the redactions were insufficient and stated, "I think that I'm going to object to these records coming in the way they are."  In response, the judge advised that he would address that issue after jury empanelment.  Following empanelment, the judge

_____

[4] The defendant also filed a motion to redact the medical records.  As discussed, infra, the judge's ruling on the Commonwealth's motion likewise addressed the substance of the defendant's motion.

4

heard the parties' arguments, and then the following exchange

occurred:

> Judge: "[I]s the part where it says, 'Urgent care for facial bones assault three weeks ago where she was struck in the face and head with a hammer. Patient endorses she feels safe in her current environment.' Is that what you're objecting to?"

> Defense counsel: "Yes."

The judge then ruled that the portion of the medical records

that stated that the victim was struck in the head with a hammer

was a statement made for purposes of medical diagnosis and was

admissible. The judge agreed with defense counsel that the

remaining portion that was the subject of his objection would be

redacted. Defense counsel objected to the judge's ruling.

Otherwise, the defendant did not object to any other portion of

the medical records.[5] Thus, we review the objected-to portion of

the medical records for prejudicial error, see Commonwealth v.

Cole, 473 Mass. 317, 321 (2015), and limit our review regarding

the remaining references now contested on appeal to determine

---

[5] The defendant acknowledged at oral argument that the objection at trial pertained only to the statement discussed above, at the second page of the medical records, and did not preserve the remaining concerns regarding repeated references to "assault" and a "physical assault." We appreciate appellate counsel's candor in this regard.

5

whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Dargon, 457 Mass. 387, 397 (2010).[6]

With respect to the objected to portion of the medical records, the defendant's fundamental argument is that the medical records referenced the patient's statement that "she was struck with a hammer on the right side of her head." This contention fails because this information falls within the medical record exception to the hearsay rule as it relates to a potential cause of the victim's injuries. See G. L. c. 233, § 79. See also Commonwealth v. McGann, 484 Mass. 312, 320 (2020); Dargon, 457 Mass. at 395-396. We further note that the jury acquitted the defendant of assault and battery by means of a dangerous weapon -- i.e., the one count involving the use of the hammer -- and thus discern no prejudice in any event. See Commonwealth v. Sosnowski, 43 Mass. App. Ct. 367, 372 (1997).

As to the unpreserved errors, the defendant argues that the repeated references to "assault" and "[i]njury due to physical assault" constituted error. In evaluating whether any error

---

[6] Our review is somewhat hampered because only the unredacted medical records, and not the redacted version that went to the jury, have been included in the record appendix. In addition, the defendant did not move to correct or modify the record pursuant to Mass. R. A. P. 8 (e), as appearing in 481 Mass. 1611 (2019). In any event, for the reasons stated herein, we are persuaded that the admission of the medical records neither constituted prejudicial error nor created a substantial risk of a miscarriage of justice.

created a substantial risk of a miscarriage of justice in this context, we consider: (1) whether there was error; (2) what prejudice, if any, the defendant suffered as a result of the error; (3) whether the error in the context of the entire trial materially influenced the verdict; and (4) whether trial counsel's failure to object was a reasonable tactical decision. See Dargon, 457 Mass. at 397. The Commonwealth acknowledged that the failure to redact the references to "assault" in the present context was error. Nonetheless, we discern no palpable prejudice. The jury were well aware that a claim of assault formed the basis of the charges, and the medical records added nothing to that awareness. Having reviewed the entire trial record, we are persuaded that the error did not materially affect the jury. Moreover, through effective cross-examination and closing argument, defense counsel used the medical records to demonstrate that the victim's claimed injuries were not supported by the content of and purported conclusions within the medical records. Defense counsel further used the medical records to show potential inconsistencies in the victim's testimony. Because the defendant did not file a motion for new trial arguing that trial defense counsel was ineffective for failing to redact or move to strike the references to "assault," the record before us does not include direct evidence of counsel's strategy. Contrast Commonwealth v. Gardner, 102 Mass.

7

App. Ct. 299, 313 (2023).  Again, defense counsel directed the jury to the medical records and their content, highlighting what he argued were inconsistencies between the victim's trial testimony and those records -- i.e., the very records the defendant now contends should have been excluded.  In this context, defense counsel's refraining from objecting to the references to "assault" may have been a tactical decision.  In short, without a motion for a new trial, and on the record before us, we discern no substantial risk of a miscarriage of justice.[7]  See Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 697 (2015).

2.  Sufficiency of evidence.  We review the denial of a motion for required finding of not guilty to determine "whether, after viewing the evidence in the light most favorable to the

---

[7] The defendant does not raise a claim of ineffective assistance of counsel on appeal.  To the extent that his arguments note the failure of defense counsel to object at trial, however, it is well established "that the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial."  Commonwealth v. Zinser, 446 Mass. 807, 810 (2006).  "Relief on a claim of ineffective assistance based on the trial record is the weakest form of such a claim because it is 'bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight.'"  Commonwealth v. Gorham, 472 Mass. 112, 116 n.4 (2015), quoting Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).  Relief may be granted on such a claim, however, "when the factual basis of the claim appears indisputably on the trial record."  Commonwealth v. Davis, 481 Mass. 210, 223 (2019), quoting Gorham, supra.  Here, we cannot say on this record that defense counsel's failure to object was a manifestly unreasonable tactical decision.

8

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 318-319 (1979). See also Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995). Reasonable inferences may be drawn from the evidence, see <u>Commonwealth</u> v. <u>Bush</u>, 427 Mass. 26, 30 (1998), and need only be reasonable and possible, not necessary or inescapable. See <u>Commonwealth</u> v. <u>Morgan</u>, 449 Mass. 343, 349 (2007). Here, even setting aside the medical records, the victim's testimony combined with the photographs depicting her injuries was more than sufficient to meet the <u>Latimore</u> standard. The judge did not err in denying the defendant's motion.

3. <u>Closing argument</u>. The defendant claims that various errors in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. The claims are unavailing.

We consider the challenged statements in the context of the entire closing, the judge's instructions to the jury, and the evidence at trial. See <u>Commonwealth</u> v. <u>Martinez</u>, 476 Mass. 186, 198 (2017). "A new trial will be ordered only in the extraordinary situation where, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated" (citation omitted). <u>Commonwealth</u> v. <u>Azar</u>, 435

9

Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005). See Commonwealth v. McDermott, 493 Mass. 403, 416-418 (2024).

The defendant first claims that the prosecutor erred by telling the jury to look at the medical records, including the reference to the victim being "assaulted three weeks ago with a hammer in the face." We first note that defense counsel asked the jury to review the medical records and highlighted them in his closing argument. It is thus not surprising in this context that the prosecutor would likewise reference the same records. That notwithstanding, we will assume for purposes of our analysis that the prosecutor should not have referenced the portion of the records involving the hammer. As noted above, the jury acquitted the defendant of the assault and battery by means of a dangerous weapon count. See Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011) (that jury acquitted defendant of certain charges suggests they were not swayed by prosecutor's excesses). Further, this alleged error, viewed in the context of the closing arguments as a whole and in view of the evidence at trial, did not create a substantial risk of a miscarriage of justice. The judge instructed the jury multiple times that closing arguments are not evidence. He further instructed the jury that the defendant is entitled to a verdict based solely on the evidence and not based on sympathy, bias, or prejudice. See Commonwealth v. Anderson, 445 Mass. 195, 209-210

10

(2005) (judge mitigated any potential prejudice by instructing jurors, inter alia, "not to base their verdicts on any sympathy or emotion").  See also Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015) (jury presumed to follow instructions).  That the defendant did not object to the prosecutor's statements at trial also "tends to support the inference that the prosecutor's misstatement was not so egregious and prejudicial as [he] now claims."  Commonwealth v. Maynard, 436 Mass. 558, 571 (2002).  Of further note, "[w]e ascribe a certain level of sophistication to the jury, and, [on this record], have little doubt that they would not have been swayed by this [misstatement]" (citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 805 (2022).  Therefore, appellate relief is not warranted.[8]

Judgments affirmed.

By the Court (Blake, C.J., Neyman & Grant, JJ.[9]),

Clerk

Entered:  January 8, 2026.

---

[8] The defendant also argues that the prosecutor appealed to the jurors' emotions and sympathy for the victim by referencing the victim's fear in the face of the sheer brutality of the assault.  The brief comment was grounded in the evidence, as the victim testified that she declined to disclose the assaults to the police or go to the hospital for these very reasons.  The statement was not improper.

[9] The panelists are listed in order of seniority.

11