NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-641

COMMONWEALTH

vs.

STEPHEN JASZEK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury-waived trial, the defendant, Stephen Jaszek, appeals from his convictions of four counts of rape of a child and one count of indecent assault and battery on a child.  He argues that an excessive amount of prior bad acts evidence was improperly admitted at trial and that the prosecutor's closing argument was inflammatory, expressed improper opinions, and vouched for witness credibility.  For the reasons set forth below, we affirm.

Background.  We summarize the facts the judge could have found, reserving certain details for later discussion.  Jaszek is a former elementary school music teacher.  The victim -- an adult by the time of trial -- was one of Jaszek's students when

she was in the third through fifth grades.  For several months starting in the fall of the victim's fifth-grade year, Jaszek frequently told her to stay inside from recess for extra music lessons.  It was during these extra lessons that the assaults occurred.

The victim did not like Jaszek as a teacher, describing him as "mad and loud," and recalling being scared of him.  She testified to Jaszek's getting mad at her on at least two specific occasions when he assaulted her.  She further testified that there were other times when Jaszek would be mad and yell at her without her knowing why.

The victim struggled with her mental health throughout her life, including experiencing selective mutism as early as third grade, attending an in-patient behavioral clinic as a teenager, and seeking counselling while in college.  Medical records from various points in her life were introduced at trial, including notes on her memory and mental health.

The victim was a senior in high school when she first disclosed to a friend that she had been assaulted by her music teacher in elementary school.  Then, in college, the victim began seeing a therapist regarding the assaults, and eventually law enforcement became involved.

Jaszek was subsequently indicted.  The victim was the only witness who testified directly to the assaults, with other

witnesses providing varying degrees of corroboration.  Of the Commonwealth's twelve witnesses, eight -- including the victim -- testified to Jaszek being an angry, scary, creepy, intimidating, or even violent person.  Jaszek did not object to the vast majority of this testimony; when he did object, it was not on propensity grounds.[1]

Jaszek's defense was that the assaults had never happened and that the victim's memory and testimony were unreliable.  On cross-examination of the victim and during closing arguments, defense counsel used portions of her medical records to challenge her credibility.  The only witness for the defense was a cognitive psychologist who testified as an expert about memory distortion and the creation of false memories.  Jaszek was convicted.

Discussion.  As Jaszek did not object at trial on the grounds he now argues, we review to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 297-298 (2002).  That

_____

[1] Jaszek objected on hearsay grounds to the victim's mother's testifying about Jaszek's angry or violent behavior as reported to her by her children.  The objection was initially sustained but was later overruled when the subject came up again in relation to the mother's motivation for avoiding the victim's being in Jaszek's class, a nonhearsay reason for its admission.  Jaszek also objected to one witness's characterization of Jaszek as having "a reputation"; the judge sustained the objection "as to reputation testimony."

3

question turns on whether we have "a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

1. Propensity and prior bad acts. Jaszek argues that evidence of his having a bad temper, being angry, mistreating students, or breaking classroom objects was inadmissible propensity evidence. He further argues that, even if the evidence was otherwise admissible, the amount of such evidence was so unfairly prejudicial as to require a new trial. In the specific context of this jury-waived trial, and where Jaszek did not object on propensity grounds at any point, his arguments are unpersuasive.

Evidence of prior bad acts may not be introduced to prove the defendant's "bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose" (citations omitted). Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). One permissible purpose is "to show [the victim's] state of mind -- the explanation for her long-delayed disclosure of what had happened to her: fear of the defendant." Commonwealth v. McKinnon, 35 Mass. App. Ct. 398, 404-405 (1993). Nonetheless, "even if relevant, a judge must guard against the risk that evidence of prior bad acts will divert . . . attention from the charged acts," Commonwealth v. Dwyer, 448 Mass. 122, 129 (2006), and such evidence will not be

4

admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant.  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).

Evidence of Jaszek's bad temper and poor treatment of his students was relevant for at least one nonpropensity purpose.  Specifically, the evidence explained why the victim did not disclose the assault at the time, i.e., that she was scared of Jaszek and did not want him to be mad at her.  Testimony from other witnesses about Jaszek's temper tended to corroborate the victim's testimony and so was relevant to her credibility and the accuracy of her memory, which were decisive issues here.  See Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 188 (2013) (witness's credibility is relevant issue in any case).

Thus, the evidence was admissible unless its prejudicial effect outweighed its probative value.  In general, this risk is low in a jury-waived trial, because the judge is presumed to have applied correct principles of law and not to have relied on evidence for an improper purpose.  See Commonwealth v. Milo M., 433 Mass. 149, 152 (2001); Commonwealth v. Dragotta, 89 Mass. App. Ct. 119, 128 (2016), S.C., 476 Mass. 680 (2017).  Here, the amount of evidence about Jaszek's temper appears to have been excessive.  But, even assuming that some of the testimony would have been excluded had there been an objection, Jaszek has not argued on appeal that the judge considered the evidence for an

5

improper purpose. Indeed, when discussing an objection at one point, defense counsel told the judge, "[t]here's no jury here, so I trust that you'll filter it out." As we see no unfair prejudice on this issue, any error in admitting the evidence created no substantial risk of a miscarriage of justice.[2]

2. <u>Closing argument</u>. Jaszek argues that the prosecutor made two main errors in his closing argument: (1) expressing a personal opinion on the evidence, including by vouching for the victim's credibility, and (2) appealing to the sympathies of the fact finder. While we agree that some portions of the prosecutor's argument were impermissible, we conclude that there was no substantial risk of miscarriage of justice.

a. <u>Personal opinion and vouching</u>. The Commonwealth's arguments as to the evidence and the victim's credibility were within the bounds of zealous advocacy and retaliatory reply. "Improper vouching occurs if 'an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the [fact finder].'" <u>Commonwealth</u> v. <u>Kee</u>, 449 Mass. 550, 560 (2007),

---

[2] Nonetheless, the better practice in a jury-waived trial would be to object, because a judge may not be immune from the effects of unduly prejudicial evidence. There is still a risk that excessive bad acts evidence may overwhelm a trial and divert a judge's attention from the charges and conduct at issue.

quoting Commonwealth v. Ortega, 441 Mass. 170, 181 (2004).
However, "a prosecutor may argue zealously in support of
inferences favorable to the Commonwealth's case that reasonably
may be drawn from the evidence," Commonwealth v. Carriere, 470
Mass. 1, 22 (2014), including replying to defend a witness's
credibility where the defendant has attacked it.  See Kee,
supra.

Here, the prosecutor appropriately responded to Jaszek's
theory that the victim's memory was unreliable or false.  The
prosecutor's broad statements such as "[t]he only way [the
victim's] statements make sense is if they happened", did not
express any personal belief that the events occurred, but
instead argued the inferences that the fact finder could
reasonably draw from the testimony of the victim and the
numerous witnesses who corroborated it.  Thus, we see no error
on this ground.

b.  Appealing to sympathies and inflaming passions.  Jaszek
further argues that the prosecutor's closing argument was overly
inflammatory and designed to arouse the passions of the fact
finder.  Although we agree that a number of the prosecutor's
statements were inappropriate, we conclude that there was no
substantial risk of miscarriage of justice.

In closing arguments, "prosecutors may not play . . . on
the [fact finder's] sympathy or emotions" (quotation and

7

citation omitted).  Commonwealth v. Martinez, 476 Mass. 186, 197 (2017).  A prosecutor also may not use language which is "so rousing or inflammatory as to sweep the [fact finder] beyond rational examination of the evidence."  Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011).

Here, Jaszek argues that the prosecutor twice improperly described him as a "predator."  We agree that precedent disfavors use of the term "predator" to describe a defendant if the literal definition of the term is not relevant to the case. See Commonwealth v. Sheehan, 435 Mass. 183, 191 (2001); Commonwealth v. Ormonde, 55 Mass. App. Ct. 231, 235 (2002). Nonetheless, any error here created no substantial risk of a miscarriage of justice.  Although not dispositive, we consider a defendant's lack of objection at trial as "some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Barbosa, 477 Mass. 658, 669 (2017), quoting Commonwealth v. Lyons, 426 Mass. 466, 471 (1998).  Here, not only did defense counsel fail to object, but his own closing argument foreshadowed that "the Commonwealth is going to try to paint [Jaszek] as a predator."  Considering this combination, we see no unfair prejudice.

Jaszek next argues that the Commonwealth's closing argument disparaged defense counsel; we are not persuaded that there was

8

any substantially prejudicial error.  "Disparaging remarks about the qualifications or motivations of defense counsel, or lawyers in general, are disfavored."  Commonwealth v. Awad, 47 Mass. App. Ct. 139, 142 (1999).  But "[a] prosecutor [is] permitted to comment on the defense strategy and tactics."  Commonwealth v. Henley, 488 Mass. 95, 131 (2021).  Here, the prosecutor's characterization of defense counsel as "spen[ding] hours flipping through [the victim's medical records], picking out individual words," and "suggest[ing] that they mean something that they don't" was a permissible response to the defense's strategy of discrediting the victim based on specific statements in her medical records.  The prosecutor's description of such efforts as attempts to "weaponize" the medical records added little, but was not improperly disparaging; it did not criticize counsel's "qualifications or motivations," Awad, supra.  On the other hand, the prosecutor's reference to defense counsel as arguing "nonsense" was improper.  See Commonwealth v. McCravy, 430 Mass. 758, 764 (2000) (improper to characterize "whole defense" as "sham").  However, we see no significant prejudice from this isolated characterization.

Jaszek finally argues that the prosecutor appealed to emotions by concluding his closing argument with an extended discussion of all the victim had "endured."  The prosecutor used the term "endured" in ten of the final twelve sentences of his

argument.  These repeated references both (1) risked improperly appealing to the fact finder's sympathies and (2) bordered on the impermissible suggestion "that a victim's testimony is entitled to greater credibility merely by virtue of her willingness to come into court to testify."  Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008).  Nonetheless, we cannot conclude that they created any substantial prejudice in the present case.

"A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence was to be considered in his role as factfinder."  Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002).  Cf. Commonwealth v. Thad T., 59 Mass. App. Ct. 497, 508 (2003) ("Only a compelling showing of ineradicable prejudice would cause us to conclude that [a] judge's instructions to disregard [particular evidence] were inadequate").  Jaszek has made no such showing here.  Thus, considering this unrebutted presumption, defense counsel's lack of objection throughout closing arguments, and the evidence presented at trial, we are not convinced that the result might have been otherwise but for the prosecutor's errors.  See LeFave, 430 Mass. at 174.  Those errors, even considered cumulatively, did not create a substantial risk of a miscarriage of justice.

That said, to the extent that "the government here managed to skate a fine line between proper argument and reversible error . . . there was no justification for cutting things so fine. Were the facts changed but slightly, the outcome here easily could [have] be[en] different" (citation omitted). Commonwealth v. Correia, 65 Mass. App. Ct. 27, 38 n.11 (2005). Even in a jury-waived trial, errors in closing arguments, particularly if preserved, may sometimes require a new trial. We conclude, however, that such is not the case here.

Judgments affirmed.

By the Court (Henry, Sacks & Tan, JJ.[3]),

*Paul Little*

Clerk

Entered:  January 13, 2026.

---

[3] The panelists are listed in order of seniority.